B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Thomas W. Waldrep, Jr., as Chapter 11 Trustee for<br>CAH Acquisition Company 6, LLC d/b/a I-70 Community Hospital | DEFENDANTS<br>GTR Source LLC |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Waldrep LLP<br>101 S. Stratford Road, Suite 210<br>Winston-Salem, NC 27104<br>Tel: 336-717-1440    Email: notice@waldrepllp.com | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| □ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor      □ Other<br>☒ Trustee | □ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor      □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint to (i) avoid, recover, and preserve for the benefit of the estate preferential transfers pursuant to 11 U.S.C. 547, 550, and 551; (ii) avoid, recover, and preserve for the benefit of the estate fraudulent transfers pursuant to 11 U.S.C. 544, 548, 550, and 551; and (iii) avoid, recover, and preserve for the benefit of the estate unauthorized post-petition transfers pursuant to 11 U.S.C. 549, 550, and 551.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☒ 12-Recovery of money/property - §547 preference
- ☒ 13-Recovery of money/property - §548 fraudulent transfer
- ☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>CAH Acquisition Company 6, LLC d/b/a I-70 Community Hospital | BANKRUPTCY CASE NO.<br>19-01300-5-JNC | |
| DISTRICT IN WHICH CASE IS PENDING<br> Eastern District of North Carolina | DIVISION OFFICE<br>Greenville | NAME OF JUDGE<br>Callaway |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*/s/ Thomas W. Waldrep, Jr.*<br> Thomas W. Waldrep, Jr. (N.C. State Bar No. 11135)<br>101 S. Stratford Rd., Suite 210<br>Winston-Salem, NC 27104<br>Tel: (336) 717-1440   Email: notice@waldrepllp.com | | |
| DATE<br> 06/25/2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br> Thomas W. Waldrep, Jr. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| IN RE:<br><br>**CAH ACQUISITION COMPANY 6, LLC d/b/a I-70 COMMUNITY HOSPITAL,**<br><br>**Debtors.** | **Case No. 19-01300-5-JNC**<br><br>**Chapter 11** |
| **THOMAS W. WALDREP, JR., as Chapter 11 Trustee for CAH ACQUISITION COMPANY 6, LLC d/b/a I-70 COMMUNITY HOSPITAL,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GTR SOURCE LLC,**<br><br>**Defendant.** | **Adv. Pro. No. _____** |

**COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS, FRAUDULENT TRANSFERS, AND POST-PETITION TRANSFERS**

Plaintiff Thomas W. Waldrep, Jr., as Chapter 11 trustee (the "Trustee") for CAH Acquisition Company 6, LLC d/b/a I-70 Community Hospital (the "Debtor"), by and through his undersigned counsel, brings this Complaint against GTR Source LLC ("GTR") to (i) avoid, recover, and preserve for the benefit of the estate certain preferential transfers by the Debtor to or for the benefit of GTR pursuant to Sections 547, 550, and 551 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"); (ii) avoid, recover, and preserve for the benefit of the estate certain fraudulent transfers by and between the Debtor and GTR pursuant to Sections 544, 548, 550, and 551 of the Bankruptcy Code; and (iii) avoid, recover, and preserve for the benefit of the estate certain post-petition transfers by the Debtor to or for the benefit of GTR pursuant to Sections 549, 550, and 551 of the Bankruptcy Code.

1

## PARTIES

1.      The Debtor is a Delaware limited liability company with its principal place of business at 105 East Hospital Drive, Sweet Springs, Missouri 65351.

2.      The Trustee is the duly appointed, qualified, and acting Chapter 11 trustee of the Debtor's estate.

3.      GTR is a New Jersey limited liability company with its principal office address at 111 John Street, Suite 1210, New York, New York, 10038.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

5.      Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. §§ 1408 and 1409(a).

6.      The claims in this adversary proceeding are core proceedings pursuant to 28 U.S.C. § 157(b)(2).  This Court may constitutionally enter final orders on these causes of action.  To the extent that the Court determines that any claim made herein is a non-core proceeding and/or to the extent that the Court determines that it may not enter final orders with respect to any such claim, the Trustee consents to the entry of a final order by the Court on any such claim.

7.      This adversary proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## FACTUAL ALLEGATIONS

### *Procedural Background*

8.      On March 21, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before this Court.

9.      On March 29, 2019, the Court entered an Order approving the appointment of the Trustee.

10.      Since his appointment as Chapter 11 trustee on March 29, 2019, the Trustee has administered the estate of the Debtor, as well as six other affiliated debtors in bankruptcy cases currently pending before this Court (collectively, the "Affiliated Debtors"). See *Order Directing Joint Administration of Chapter 11 Cases*, Case No. 19-00730. [Dkt. No. 75].

11.      The Debtor operates I-70 Community Hospital ("I-70"), a for-profit, Critical Access Hospital located in Sweet Springs, Missouri.

12.      Prior to the Petition Date, I-70 provided acute care, swing bed, emergency medicine, radiology, physical rehabilitation, laboratory, and related outpatient ancillary services to residents in Sweet Springs and in surrounding communities.

13.      Upon information and belief, the Debtor is currently owned by HMC/CAH Consolidated, Inc. ("HMC") (20% interest) and Health Acquisition Company, LLC ("HAC," and together with HMC, the "Owners") (80% interest).

### *The Debtor Guarantees a Merchant Cash Advance Agreement in Favor of GTR*

14.      This action arises from certain pre- and post-petition transfers of property of the Debtor for the primary benefit of GTR.

15.      Upon information and belief, GTR is a merchant cash advance ("MCA") lender that provides short-term financing to businesses.

16.      Upon information and belief, an MCA arrangement involves a debtor receiving short-term capital from a lender in exchange for future repayment, with interest, until the MCA lender is paid in full.

17.     Though styled as a "sale" of future receivables, MCA transactions bear many of the hallmarks of disguised loans.

18.     Upon information and belief, on or about November 20, 2018, Jorge A. Perez ("Perez") caused the Debtor, as well as nine other rural hospitals (collectively, the "Guarantors"), to guarantee an MCA agreement (the "MCA Agreement") by and between GTR and another hospital, De Queen Medical Center ("De Queen").

19.     De Queen is a for-profit, Critical Access Hospital located in De Queen, Arkansas.

20.     Upon information and belief, De Queen is owned by the Owners.

21.     Upon information and belief, the MCA Agreement was intended to provide DeQueen with a loan of $500,000.00 in exchange for repayment of $749,500.00.

22.     The MCA Agreement purported to grant a blanket security interest on the assets of the Debtor.

23.     Upon information and belief, Perez executed an Affidavit of Confession of Judgment (the "Confession of Judgment") in favor of GTR, and on behalf of the Debtor and the Guarantors, for $749,500.00, the full repayment.

24.     Upon information and belief, the Confession of Judgment was executed concurrently with the MCA Agreement.

25.     A copy of the MCA Agreement and the Confession of Judgment are attached hereto as Exhibit A.

26.     The Trustee is informed and believes that the Debtor did not receive any funds (or any other value) from GTR or in any way in connection with the transaction between De Queen and GTR prior to, concurrent with, or after the execution of the MCA Agreement and the Confession of Judgment.

*__Pre-Petition Transfers for the Benefit of GTR__*

27.     On January 15, 2019, $11,999.00 was electronically transferred from the Debtor's bank account for the benefit of GTR as payment for obligations due by De Queen under the MCA Agreement.

28.     On January 18, 2019, $2,999.75 was electronically transferred from the Debtor's bank account for the benefit of GTR as payment for obligations due by De Queen under the MCA Agreement.

29.     On January 22, 2019, $2,999.75 and $2,999.75 were electronically transferred from the Debtor's bank account for the benefit of GTR as payment for obligations due by De Queen under the MCA Agreement.

30.     On January 23, 2019, $2,999.75 electronically transferred from the Debtor's bank account for the benefit of GTR as payment for obligations due by De Queen under the MCA Agreement.

31.     In total, $23,998.00 electronically transferred prior to the Petition Date from the Debtor's bank account for the benefit of GTR as payment for obligations due by De Queen under the MCA Agreement.

32.     Redacted copies of the Debtor's bank statements reflecting those pre-petition transfers are attached hereto as Exhibit B.

*__Post-Petition Garnishment for the Benefit of GTR__*

33.     Upon information, prior to the Petition Date, GTR commenced litigation against the Debtor in a New York state court and obtained a writ of garnishment against the Debtor's bank accounts.

34.      On April 1, 2019, eleven days after the Petition Date, $71,545.85 was garnished from the Debtor's bank account for the benefit of GTR.  A redacted copy of the Debtor's bank statement reflecting this post-petition transfer is attached hereto as <u>Exhibit C</u>.

### FIRST CAUSE OF ACTION
Avoidance of Fraudulent Transfers—11 U.S.C. §§ 544, 548

35.      The Trustee incorporates paragraphs 1 through 34 as if fully alleged herein.

36.      As shown on <u>Exhibit B</u>, within the 90-day period prior to the Petition Date (the "<u>Preference Period</u>"),[1] certain of the Debtor's funds were electronically transferred for the benefit of GTR in the aggregate amount of $23,998.00 (the "<u>548 Transfers</u>").

37.      The MCA Agreement, Confession of Judgment, and the 548 Transfers were made within two years before the Petition Date.

38.      The Debtor received no value from GTR prior to, concurrent with, or at any point following the execution of the MCA Agreement, but the MCA Agreement purported to provide GTR with a blanket security agreement on the Debtor's assets.

39.      The Debtor received no value from GTR prior to, concurrent with, or at any point following the execution of the Confession of Judgment, but the Confession of Judgment purported to confess a $749,000.00 judgment in favor of GTR and against the Debtor.

40.      The Debtor received no value from GTR prior to, concurrent with, or at any point following the 548 Transfers.

41.      The Debtor was insolvent at the time the MCA Agreement was executed.

42.      The Debtor was insolvent at the time the Confession of Judgment was executed.

43.      The Debtor was insolvent at the time the 548 Transfers occurred.

---

[1] The Preference Period runs from December 21, 2018, through March 20, 2019.

44.     The Trustee can avoid the MCA Agreement, and any liens or other obligations created therein, pursuant to 11 U.S.C. §§ 544 and 548(b).

45.     The Trustee can avoid the Debtor's guarantee of the MCA Agreement, and any liens or other obligations created thereby, pursuant to 11 U.S.C. §§ 544 and 548(b).

46.     The Trustee can avoid the Confession of Judgment, and any liens or other obligations created therein, pursuant to 11 U.S.C. §§ 544 and 548(b).

47.     The Trustee may avoid the 548 Transfers of property of the Debtor's estate pursuant to 11 U.S.C. § 548(b).

## SECOND CAUSE OF ACTION
In the Alternative, Avoidance of Preferential Transfers—11 U.S.C. § 547

48.     The Trustee incorporates paragraphs 1 through 47 as if fully re-alleged herein.

49.     In the alternative, if it is determined that the MCA Agreement represented a valid pre-petition obligation of the Debtor (which the Plaintiff expressly denies), the 548 Transfers were made for or on account of allegedly antecedent debts owed by the Debtor to GTR before the 548 Transfers were made.

50.     Each of the 548 Transfers was made while the Debtor was insolvent.

51.     Each of the 548 Transfers enabled GTR to receive more than it would have received if (a) the Debtor's case was a case under Chapter 7 of the Bankruptcy Code; (b) the transfer had not been made, and (c) GTR received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

52.     In the alternative, if it is determined that the MCA Agreement represented a valid pre-petition obligation of the Debtor (which the Plaintiff expressly denies), the Trustee may avoid the 548 Transfers of property of the Debtor's estate pursuant to 11 U.S.C. § 547(b).

### THIRD CAUSE OF ACTION
Avoidance of Unauthorized Post-Petition Transfers—11 U.S.C. § 549

53.    The Trustee incorporates paragraphs 1 through 52 as if fully re-alleged herein.

54.    As shown on <u>Exhibit C</u>, eleven days after the Petition Date, the sum of $ 71,545.85 was garnished from the Debtor's bank account for the benefit of GTR (the "<u>549 Transfer</u>").

55.    The 549 Transfer was made post-petition on account of an allegedly pre-existing obligation, the guarantee of the MCA Agreement, by the Debtor to GTR.

56.    The Trustee may avoid the 549 Transfer of property of the Debtor's estate pursuant to 11 U.S.C. § 549(a).

### FOURTH CAUSE OF ACTION
Recovery of Transfers and Preservation of Avoided Liens—11 U.S.C. §§ 550, 551

57.    The Trustee incorporates paragraphs 1 through 56 if fully re-alleged herein.

58.    GTR was the entity for whose benefit the 548 Transfers and the 549 Transfer were made.

59.    GTR was the entity for whose benefit the security interest of the MCA Agreement, and the judicial lien of the Confession of Judgment were made.

60.    For the bases set forth above, the Trustee may recover the 548 Transfers and the 549 Transfer, or the value of the 548 Transfers and the 549 Transfer, from GTR, pursuant to 11 U.S.C. § 550(a)(1), plus prejudgment interest, postjudgment interest, reasonable and necessary attorneys' fees to the extent permitted by law, and all costs of this adversary proceeding; provided, however, that the Trustee does not seek, and shall not be entitled to, more than a single satisfaction of these avoidable transfers.

61.    For the bases set forth above, the Trustee may avoid the MCA Agreement, the Debtor's guarantee of the MCA Agreement, the Confession of Judgment, and any liens created

therein; and those avoided liens, together with the 548 Transfers and the 549 Transfer, are preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.

### RESERVATION OF RIGHTS

62.     As discovery proceeds, the Trustee may become aware of additional causes of action or transfers not set forth in this Complaint.  The Trustee expressly reserves any and all rights to amend this Complaint, including without limitation to add additional transfers, claims, and causes of action, including without limitation additional claims or causes of action based on newly discovered information not available as of the filing of this Complaint.

**WHEREFORE**, the Trustee respectfully requests that the Court enter judgment against the Defendants as follows:

A.     Avoiding the MCA Agreement, the Confession of Judgment, any liens created by the MCA Agreement, the Confession of Judgment, and the 548 Transfers as fraudulent transfers;

B.     Avoiding the 548 Transfers as preferences;

C.     Avoiding the 549 Transfer as an unauthorized post-petition transfer;

D.     Awarding the Trustee a money judgment against GTR in an amount equal to the aggregate amount of the 548 Transfers and the 549 Transfer; provided, however, that the Trustee shall not be entitled to, and does not seek, more than a single satisfaction of such transfers;

E.     Awarding the Trustee prejudgment interest;

F.     Awarding the Trustee postjudgment interest at the highest legally permissible rate on the amount for which judgment is entered until the amount has been fully paid with costs and accrued interest;

G.     Awarding the Trustee his costs;

H.      Awarding the Trustee his reasonable and necessary attorneys' fees to the extent permitted by law, through and including trial and for any subsequent appeal;

I.      Preserving the MCA Agreement, the Confession of Judgment, and the avoided liens of the MCA Agreement and Confession of Judgment, together with the 548 Transfers and the 549 Transfer, for the benefit of the estate; and

J.      Granting the Trustee such additional relief as the Court deems just and proper.

Respectfully submitted, this the 25th day of June, 2019.

**WALDREP LLP**

/s/ *Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC State Bar No. 39871)
Francisco T. Morales (NC State Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**
Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: jhendren@hendrenmalone.com
        rredwine@hendrenmalone.com

*Attorneys for the Trustee*

# EXHIBIT A

Contract ID#: _____

Sales Partner: _____

# GTR SOURCE LLC

## MERCHANT AGREEMENT

Agreement dated **November 20, 2018** between GTR Source LLC (**"GSL"**) and the Merchant listed below (**"MERCHANT"**)

    (Month)  (Day)  (Year)

### MERCHANT INFORMATION

Merchant's Legal Name: **DEQUEEN MEDICAL CENTER INC and the entities listed on annexed "Exhibit A"**

D/B/A: **DEQUEEN MEDICAL CENTER**     State of Incorporation / Organization: **AR**   Federal Tax ID **20-2251895**

Type of Entity (circle one)  Corporation  Limited Liability Company Limited Partnership   Limited Liability Partnership   Sole Proprietorship

Physical Address: **1306 WEST COLLIN RAY DR**     City: **DE QUEEN,**    State: **AR**     Zip: **71832**

Contact Name: _____ Contact Number: _____ Email: _____

Mailing Address: **1306 WEST COLLIN RAY DR**     City: **DE QUEEN,**    State: **AR**     Zip: **71832**

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant ("Merchant" or "Seller") hereby sells, assigns and transfers to GSL ("GSL" or "Buyer") (making GSL the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods or services (the "Transactions") until the amount specified below (the "Purchased Amount") has been delivered by or on behalf of Merchant to GSL.

The Purchased Amount shall be paid to GSL by Merchant's irrevocably directing and authorizing that there be only one depositing bank account, which account must be acceptable to, and pre-approved by, GSL (the "Account") into which Merchant and Merchant's customers shall remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each Transaction, until such time as GSL receives payment in full of the Purchased Amount. Merchant hereby authorizes GSL to ACH Debit the specified remittances from the merchant's Account on a daily basis and will provide GSL with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by GSL remains in the Account and will be held responsible for any fees incurred by GSL resulting from a rejected ACH attempt or an event of default (See Appendix A) GSL is not responsible for any overdrafts or rejected transactions that may result from GSL's ACH debiting the specified amounts under the terms of this agreement. GSL will debit the specific daily amount each business day and upon receipt of the Merchant's monthly bank statements on or about the eighteenth day of each month reconcile the Merchant's Account by either crediting or debiting the difference from or back to the Merchant's Account so that the amount debited per month equals the specified percentage. GSL may, upon Merchant's request, adjust the amount of any payment due under this Agreement at GSL's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between GSL and Merchant, upon the violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

Total Purchase Price: **$ 500,000.00** Specified Percentage: **15** % Estimated Daily Amount:$ **$ 11,999.00** Total Purchased Amount:$ **$ 749,500.00**

THE MERCHANT AGREEMENT TERMS AND CONDITIONS SET FORTH ON PAGE 2, THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

**FOR THE MERCHANT (#1)**

By **JORGE ALBERTO PEREZ**     X _____

    (Print Name and Title)          (Signature)     **Sign Here**

**FOR THE MERCHANT (#2)**

By _____

    (Print Name and Title)          (Signature)     **Sign Here**

**OWNER#1**

By **JORGE ALBERTO PEREZ**     X _____

    (Print Name)          (Signature)     **Sign Here**

**OWNER #2**

By _____

    (Print Name)          (Signature)     **Sign Here**

**GTR SOURCE LLC** _____

By _____     Sales Associate Name: _____

    (Company Officer)          (Signature)

GTR Source LLC |111 John Street Suite 1210 | New York |NY 10038| Ph. (855) 662-9303 Fax (855) 204-0222

GSL must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement**. Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability**. The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.**

**MERCHANT #1**

By JORGE ALBERTO PEREZ

(Print Name and Title)

SS# 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

X _____ (Signature)

Drivers License Number _____

**Sign Here**

**MERCHANT #2**

By _____

(Print Name and Title)

SS# _____

_____ (Signature)

Drivers License Number _____

**Sign Here**

**OWNER/GUARANTOR #1**

JORGE ALBERTO PEREZ

(Print Name)

SS# 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

X _____ (Signature)

Drivers License Number _____

**Sign Here**

**OWNER/GUARANTOR #2**

_____

(Print Name)

SS# _____

_____ (Signature)

Drivers License Number _____

**Sign Here**

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represent that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to repay this obligation and that the information provided herein and in all of GSL documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and GSL, and GSL shall be entitled to all remedies available under law, equity and/or this Agreement. GSL may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to GSL. An investigative or consumer report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes GSL, its agents and representatives and any credit reporting agency engaged by GSL, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to GSL as a consequence of this Agreement or for GSL's ability to determine Merchant's eligibility to enter into any future agreement with Company. **ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD, INTENTIONAL MISREPRESENTATION AND/OR UNJUST ENRICHMENT IN WHICH EVENT PCRV WILL BE ENTITLED TO THE RECOVERY OF NOT ONLY ITS LOSSES BUT ALSO PUNITIVE DAMAGES AND ALL OF ITS COSTS AND EXPENSES AND ITS REASONABLE LEGAL FEES.**

**GTR Source LLC |111 John Street, Ste 1210 | New York |NY 10038| Ph. (855) 662-9303 Fax (855) 204-0222**

# AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Seller should keep this important legal document for Seller's records.

**DISBURSMENT OF ADVANCE PROCEEDS.** By signing below, Seller authorizes Buyer to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller later identifies and is acceptable to Buyer) (hereinafter referred to as the "Designated Checking Account") This authorization is to remain in full force and effect until Buyer has received written notification from Seller of its termination in such time and in such manner as to afford Buyer and Seller's depository bank a reasonable opportunity to act on it.

**BUSINESS PURPOSE ACCOUNT.** By signing below, Seller attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

**MISCELLANEOUS.** Buyer is not responsible for any fees charged by Seller's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Seller's account must comply with the provisions of U.S. law.

I, (We) <u>DEQUEEN MEDICAL CENTER INC and the entities listed on annexed "Exhibit A"</u> Hereby Authorize, <u>GTR Source LLC</u>
(Hereinafter known as "GSL") to Electronically (ACH) debit the Bank Account Below, of which I am a signer:

Bank Name:_____   Branch:_____

ABA: Routing:_____   DDA: Account:_____ For the

amount of: $ <u>$ 11,999.00</u>____ (Or) Percentage of each Banking Deposit: %_____

On the Following Days: _____
_____

This authorization is to remain in full force and effect until COMPANY has received written notification from me at least 5 banking days prior of its termination to afford COMPANY a reasonable opportunity to act on it.

Signer :(Print Name /Title)_____   Date: <u>November 20, 2018</u>

X_____

GTR Source LLC |111 John Street, Ste 1210 | New York |NY 10038| Ph. (855) 662-9303 Fax (855) 204-0222

# Appendix A: The Fee Structure:

**A.** **Origination Fee-** $ $ 50,000.00 to cover Underwriting and related expenses.

**B.** **ACH Program Fee-** $ $ 50,000.00 (or 10% of the funded amount, depending on size of advance) ACH's are labor intensive and are not an automated process, requiring us to charge this fee to cover costs.

**C.** **NSF Fee Standard-** $50.00 (each) up to **THREE TIMES ONLY** before a default is declared.

**D.** **Rejected ACH-** $100.00 – When Merchant directs bank to reject our ACH Debit.

**E.** **Bank Change Fee-** $500.00- When Merchant requires a change of Bank Account to be debited, requiring us to adjust our system.

**F.** **Blocked ACH Payment-** $5,000.00—This fee is applied when Merchant directs the bank to BLOCK our ACH Debits. Blocking ACH Debits will place Merchant's account in default.

**G.** **Default Fee-** a Default Fee of $2500.00 shall be applied to Merchant's account in the event that Merchant defaults under the terms of the Merchant Agreement. *See* Merchant Agreement at p.2, ¶3.1.

**H.** **Working Capital Funding-** A fee of $5,000.00 shall be applied every time Merchant enters into any arrangement, agreement, or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than GSL. *See* Merchant Agreement at p.2, ¶2.10.

**I.** **Account Management Fee-** At the end of each month, Merchant will pay to GSL an Account Management Fee. This fee will not be applied towards the reduction of the Purchased Amount. This monthly fee will equal the average of all the payments received as a "Specified Percentage" of the Merchants settlement amount for that Month.

**J.** **Miscellaneous Service Fee-** Merchant shall pay certain fees for services related to the origination and maintenance of Accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire or 0.00 for a bank ACH. The current charge for the underwriting and origination of each Merchant Agreement is $ $ 50,000.00 paid from the funded amount. Merchant will be charged $25.00 for every additional change of their operating bank account once they are active with GSL. Additional copies of prior monthly statements will incur a fee of $10.00.

**Merchant 1 (sign)** X _____    **Print:** JORGE ALBERTO PEREZ

**Merchant 2 (sign)** _____    **Print:** _____

## ADDENDUM TO SECURED PURCHASE AND SALE OF FUTURE RECEIVABLES AGREEMENT

This Addendum is entered into on the __20TH__ day of __NOVEMBER__, 20 __18__, by and between GTR Source LLC ("GSL") and __DEQUEEN MEDICAL CENTER INC and the entities listed on annexed "Exhibit A"__ ("Seller").

1.  Should any of the terms of this Addendum conflict with the terms of the Secured Purchase and Sale of Future Receivables Agreement dated __November 20, 2018__ (the "Agreement"), then the terms of this Addendum shall govern and be controlling. Capitalized terms used herein but otherwise not defined, shall have the same definition as in the Agreement:

    a.  By signing below, the Seller hereby requests and acknowledges that the Specified Percentage shall be revised to $ __$ 11,999.00__ per business day (the "Estimated Daily Payment") which the parties agree is a good-faith approximation of the Specified Percentage, based on the Seller's receipts due to GSL pursuant to the Agreement.

    b.  The Estimated Daily Payment is to be drawn via ACH payment, from the following bank account:

        i.   Account Number: _____
        ii.  Routing Number: _____
        iii. Account Name: _____
        iv.  Bank Name: _____

    c.  At the Seller's option, within five (5) business days following the end of the calendar month, the Seller may request a reconciliation to take place, whereby the parties may ensure that the cumulative amount remitted for the subject month via the Estimated Daily Payment is equal to the amount of the Specified Percentage. However, in order to effectuate this reconciliation upon submitting the request for reconciliation to GSL – but in no event later than five (5) business days following the end of the calendar month – the Seller must produce any and all evidence and documentation requested by GSL in its sole and absolute discretion, necessary to identify the appropriate amount of the Specified Percentage. The foregoing includes without limitation, any and all bank statements, merchant processing statements, or any additional documentation necessary to ascertain the amounts of the Specified Percentage, including login to the Seller's bank account(s).

IN WITNESS WHEREOF, the parties have executed this Addendum to the Agreement as of the sate first set above.

For the Seller #1:
By: JORGE ALBERTO PEREZ
Signature:

GTR SOURCE LLC
By: _____
Signature: _____

For the Seller #2:
By: _____
Signature: _____

*** This authorization is to remain in full force and effect until GTR Source LLC receives written notification from the Seller of its termination in such time and in such manner to afford GTR Source LLC a reasonable opportunity to act on it. Revocation of this authorization prior to remittance of the balance owed pursuant to the Agreement shall constitute a breach thereunder.

# GTR SOURCE LLC

Dear Merchant,

Thank you for accepting an offer from GTR Source LLC. ("GSL") We look forward to being your funding partner for as long as you need.

Please note that the way your advance is set up GSL needs viewing access to your bank account each business day in order to calculate the amount of your daily payment. Please be assured that we will carefully safeguard your confidential information and only essential personnel will have access to it.

Please fill out the form below with the access information for your account.

Bank portal website: _____

Username: _____

Password: _____

Security Question/Answer 1:_____

Security Question/Answer 2:_____

Security Question/Answer 3:_____

Any other information necessary to access your account: _____

Please note in the event we cannot access your account we will take an estimated payment plus a $39 fee for each day we don't have access. If you have any questions please feel free to contact our cash management department directly at (855) 662-9303

GTR Source LLC |111 John Street, Ste 1210 | New York |NY 10038| Ph. (855) 662-9303 Fax (855) 204-0222

# GTR SOURCE LLC

Payment Authorization Form

Merchant Legal Name ("Merchant"):  JORGE ALBERTO PEREZ

Merchant Title: OWNER

Business Legal Name ("Business"):  DEQUEEN MEDICAL CENTER INC and the entities listed on annexed "Exhibit A"

DBA:  **DEQUEEN MEDICAL CENTER**

Physical Address:
1306 WEST COLLIN RAY DR       DE QUEEN,              AR        71832

Date:  November 20, 2018

GTR SOURCE LLC ("GSL")

Date of new secured agreement:      November 20, 2018

Name of previous funding company company receiving payment:  **FRANKLIN FUNDING GROUP LLC**

Amount of payment:   319780

To Whom It May Concern:
I, Merchant, on behalf of Business , hereby authorize GSL to make a payment in the amount above to me
Previous Funding Company on my behalf.

X _____
JORGE ALBERTO PEREZ

# GTR SOURCE LLC

Balance Transfer Form

Merchant Legal Name ("Merchant"):   JORGE ALBERTO PEREZ

Merchant Title: OWNER

Business Legal Name ("Business"):   DEQUEEN MEDICAL CENTER INC and the entities listed on annexed "Exhibit A"

DBA:   **DEQUEEN MEDICAL CENTER**

Physical Address:
1306 WEST COLLIN RAY DR DE QUEEN,                AR                71832

Date:   November 20, 2018

GTR SOURCE LLC ("GSL")

Date of new secured agreement: November 20, 2018

Date of previous secured agreement:

Remaining RTR balance:   319780

To Whom It May Concern:
I, Merchant, on behalf of Business , hereby authorize GSL to debit the remaining RTR balance which is currently due and owing to GSL pursuant to the previous secured merchant agreement, entered into by and between GSL and business.
I acknowledge that as a result of the above-referenced debit, the amount paid to business by GSL pursuant to the new secured agreement will be reduced by the amount of the remaining RTR.

X_____

JORGE ALBERTO PEREZ

# EXHIBIT A

LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER A BLANKET SECURITY INTEREST:

CAH ACQUISITION COMPANY #1 LLC d/b/a CAH ACQUISITION COMPANY #1
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
CAH ACQUISITION COMPANY #2 LLC d/b/a CAH ACQUISITION COMPANY #2
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
CAH ACQUISITION COMPANY #3 LLC d/b/a CAH ACQUISITION COMPANY #3
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
CAH ACQUISITION COMPANY #4 INC. d/b/a CAH ACQUISITION COMPANY #4
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
CAH ACQUISITION COMPANY #5 LLC d/b/a CAH ACQUISITION COMPANY #5
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
CAH ACQUISITION COMPANY #6 LLC d/b/a CAH ACQUISITION COMPANY #6
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
CAH ACQUISITION COMPANY #7 LLC d/b/a CAH ACQUISITION COMPANY #7
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
CAH ACQUISITION COMPANY 11 LLC d/b/a CAH ACQUISITION COMPANY 11
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN: 27-0560527
CAH ACQUISITION COMPANY #12 LLC d/b/a CAH ACQUISITION COMPANY #12
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
CAH ACQUISITION COMPANY #16 LLC d/b/a CAH ACQUISITION COMPANY #16
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
DRUMRIGHT REGIONAL HOSPITAL d/b/a DRUMRIGHT REGIONAL HOSPITAL
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
FAIRFAX COMMUNITY HOSPITAL d/b/a FAIRFAX COMMUNITY HOSPITAL
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
HASKELL COUNTY COMMUNITY HOSPITAL d/b/a HASKELL COUNTY COMMUNITY HOSPITAL
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
HEALTH ACQUISITION COMPANY LLC d/b/a HEALTH ACQUISITION COMPANY
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:

Buyer may file a UCC-1 financing statement with the Secretary of state (s),
reflecting a blanket security interest in the assets of the above- listed entities.

By:_____
JORGE ALBERTO PEREZ

# EXHIBIT A

LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER A BLANKET SECURITY INTEREST:

HILLSBORO COMMUNITY HOSPITAL d/b/a HILLSBORO COMMUNITY HOSPITAL
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
HORTON COMMUNITY HOSPITAL d/b/a HORTON COMMUNITY HOSPITAL
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
I-70 COMMUNITY HOSPITAL d/b/a I-70 COMMUNITY HOSPITAL
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
LAUDERDALE COMMUNITY HOSPITAL d/b/a LAUDERDALE COMMUNITY HOSPITAL
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
OSWEGO COMMUNITY HOSPITAL d/b/a OSWEGO COMMUNITY HOSPITAL
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
PRAGUE COMMUNITY HOSPITAL d/b/a PRAGUE COMMUNITY HOSPITAL
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
WASHINGTON COUNTY HOSPITAL d/b/a WASHINGTON COUNTY HOSPITAL
1700 SWIFT AVE STE 200, KANSAS CITY, MO 64116
EIN:
REGIONAL HEALTH PARTNERS LLC d/b/a REGIONAL HEALTH PARTNERS
125 SW 7TH STREET, WILLISTON, FL 32696
EIN: 46-1027216
EMPOWERHMS LLC d/b/a EMPOWERHMS
1700 SWIFT ST NORTH KANSAS CITY, MO 64116
EIN: 27-0560527
EMPOWERHMS LLC d/b/a EMPOWERHMS
13595 SW 134TH AVE #209, MIAMI, FL 33186
EIN: 27-0560527

By: _____
JORGE ALBERTO PEREZ

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF

| | |
|---|---|
| GTR SOURCE LLC | Index No. |
| Plaintiff, | **AFFIDAVIT OF** |
| -against- | **CONFESSION OF JUDGMENT** |
| DEQUEEN MEDICAL CENTER INC d/b/a DEQUEEN MEDICAL CENTER, CAH ACQUISITION COMPANY #1 LLC d/b/a CAH ACQUISITION COMPANY #1, CAH ACQUISITION COMPANY #2 LLC d/b/a CAH ACQUISITION COMPANY #2, CAH ACQUISITION COMPANY #3 LLC d/b/a CAH ACQUISITION COMPANY #3, CAH ACQUISITION COMPANY #4 INC. d/b/a CAH ACQUISITION COMPANY #4, CAH ACQUISITION COMPANY #5 LLC d/b/a CAH ACQUISITION COMPANY #5, CAH ACQUISITION COMPANY #6 LLC d/b/a CAH ACQUISITION COMPANY #6, CAH ACQUISITION COMPANY #7 LLC d/b/a CAH ACQUISITION COMPANY #7, CAH ACQUISITION COMPANY 11 LLC d/b/a CAH ACQUISITION COMPANY 11, CAH ACQUISITION COMPANY #12 LLC d/b/a CAH ACQUISITION COMPANY #12, CAH ACQUISITION COMPANY #16 LLC d/b/a CAH ACQUISITION COMPANY #16, DRUMRIGHT REGIONAL HOSPITAL d/b/a DRUMRIGHT REGIONAL HOSPITAL, FAIRFAX COMMUNITY HOSPITAL d/b/a FAIRFAX COMMUNITY HOSPITAL, HASKELL COUNTY COMMUNITY HOSPITAL d/b/a HASKELL COUNTY COMMUNITY HOSPITAL, HEALTH ACQUISITION COMPANY LLC d/b/a HEALTH ACQUISITION COMPANY, HILLSBORO COMMUNITY HOSPITAL d/b/a HILLSBORO COMMUNITY HOSPITAL, HORTON COMMUNITY HOSPITAL d/b/a HORTON COMMUNITY HOSPITAL, I-70 COMMUNITY HOSPITAL d/b/a  I-70 COMMUNITY HOSPITAL, LAUDERDALE COMMUNITY HOSPITAL d/b/a LAUDERDALE COMMUNITY HOSPITAL, OSWEGO COMMUNITY HOSPITAL d/b/a OSWEGO COMMUNITY HOSPITAL, PRAGUE COMMUNITY HOSPITAL d/b/a PRAGUE COMMUNITY HOSPITAL, WASHINGTON COUNTY HOSPITAL d/b/a WASHINGTON COUNTY HOSPITAL, REGIONAL HEALTH PARTNERS LLC d/b/a REGIONAL HEALTH PARTNERS, EMPOWERHMS LLC d/b/a EMPOWERHMS and EMPOWERHMS LLC d/b/a EMPOWERHMS and JORGE ALBERTO PEREZ, | |
| Defendants. | |

STATE OF  Florida )
                              ) ss.:
COUNTY OF  Miami-Dade )

JORGE ALBERTO PEREZ, being duly sworn, deposes and says:

1.      I am a principal, owner, and an officer of DEQUEEN MEDICAL CENTER INC D/B/A DEQUEEN MEDICAL CENTER, DEQUEEN MEDICAL CENTER INC d/b/a DEQUEEN MEDICAL CENTER, CAH ACQUISITION COMPANY #1 LLC d/b/a CAH ACQUISITION COMPANY #1, CAH ACQUISITION COMPANY #2 LLC d/b/a CAH ACQUISITION COMPANY #2, CAH ACQUISITION COMPANY #3 LLC d/b/a CAH ACQUISITION COMPANY #3, CAH ACQUISITION COMPANY #4 INC. d/b/a CAH ACQUISITION COMPANY #4, CAH ACQUISITION COMPANY #5 LLC d/b/a CAH ACQUISITION COMPANY #5, CAH ACQUISITION COMPANY #6 LLC d/b/a CAH ACQUISITION COMPANY #6, CAH ACQUISITION COMPANY #7 LLC d/b/a CAH ACQUISITION COMPANY #7, CAH ACQUISITION COMPANY 11 LLC d/b/a CAH ACQUISITION COMPANY 11, CAH ACQUISITION COMPANY #12 LLC d/b/a CAH ACQUISITION COMPANY #12, CAH ACQUISITION COMPANY #16 LLC d/b/a CAH ACQUISITION COMPANY #16, DRUMRIGHT REGIONAL HOSPITAL d/b/a DRUMRIGHT REGIONAL HOSPITAL, FAIRFAX COMMUNITY HOSPITAL d/b/a FAIRFAX COMMUNITY HOSPITAL, HASKELL COUNTY COMMUNITY HOSPITAL d/b/a HASKELL COUNTY COMMUNITY HOSPITAL, HEALTH ACQUISITION COMPANY LLC d/b/a HEALTH ACQUISITION COMPANY, HILLSBORO COMMUNITY HOSPITAL d/b/a HILLSBORO COMMUNITY HOSPITAL, HORTON COMMUNITY HOSPITAL d/b/a HORTON COMMUNITY HOSPITAL, I-70 COMMUNITY HOSPITAL d/b/a I-70 COMMUNITY HOSPITAL, LAUDERDALE COMMUNITY HOSPITAL d/b/a LAUDERDALE COMMUNITY HOSPITAL, OSWEGO COMMUNITY HOSPITAL d/b/a OSWEGO COMMUNITY HOSPITAL, PRAGUE COMMUNITY HOSPITAL d/b/a PRAGUE COMMUNITY HOSPITAL, WASHINGTON COUNTY HOSPITAL d/b/a WASHINGTON COUNTY HOSPITAL, REGIONAL HEALTH PARTNERS LLC d/b/a REGIONAL HEALTH PARTNERS, EMPOWERHMS LLC d/b/a EMPOWERHMS and EMPOWERHMS LLC d/b/a EMPOWERHMS ("Merchant Defendant"), a Corporation located at 1306 WEST COLLIN RAY DR, DE QUEEN, AR 71832, in the County of SAVIER, and as such, I have the authority to act on behalf of Merchant Defendant.

2.      I reside at 13727 SW 152 ST, SUITE 125, MIAMI, FL 33177, in the County of MIAMI-DADE.

3.      I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

4.      Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Broome, in the sum of $749,500.00 less any payments timely

made pursuant to the secured Merchant Agreement dated NOVEMBER 20, 2018, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 16% per annum from NOVEMBER 20, 2018, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

5.     In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Broome, against me personally in the sum of $749,500.00 less any payments timely made pursuant to the Merchant Agreement dated NOVEMBER 20, 2018, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 16% per annum from NOVEMBER 20, 2018, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.     This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated NOVEMBER 20, 2018, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated NOVEMBER 20, 2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

7.     Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

3

8.    If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

9.    I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this 21st day of _November_, 2018.

By: _____

JORGE ALBERTO PEREZ, individually, and on behalf of DEQUEEN MEDICAL CENTER INC D/B/A DEQUEEN MEDICAL CENTER, DEQUEEN MEDICAL CENTER INC d/b/a DEQUEEN MEDICAL CENTER, CAH ACQUISITION COMPANY #1 LLC d/b/a CAH ACQUISITION COMPANY #1, CAH ACQUISITION COMPANY #2 LLC d/b/a CAH ACQUISITION COMPANY #2, CAH ACQUISITION COMPANY #3 LLC d/b/a CAH ACQUISITION COMPANY #3, CAH ACQUISITION COMPANY #4 INC. d/b/a CAH ACQUISITION COMPANY #4, CAH ACQUISITION COMPANY #5 LLC d/b/a CAH ACQUISITION COMPANY #5, CAH ACQUISITION COMPANY #6 LLC d/b/a CAH ACQUISITION COMPANY #6, CAH ACQUISITION COMPANY #7 LLC d/b/a CAH ACQUISITION COMPANY #7, CAH ACQUISITION COMPANY 11 LLC d/b/a CAH ACQUISITION COMPANY 11, CAH ACQUISITION COMPANY #12 LLC d/b/a CAH ACQUISITION COMPANY #12, CAH ACQUISITION COMPANY #16 LLC d/b/a CAH ACQUISITION COMPANY #16, DRUMRIGHT REGIONAL HOSPITAL d/b/a DRUMRIGHT REGIONAL HOSPITAL, FAIRFAX COMMUNITY HOSPITAL d/b/a FAIRFAX COMMUNITY HOSPITAL, HASKELL COUNTY COMMUNITY HOSPITAL d/b/a HASKELL COUNTY COMMUNITY HOSPITAL, HEALTH ACQUISITION COMPANY LLC d/b/a HEALTH ACQUISITION COMPANY, HILLSBORO COMMUNITY HOSPITAL d/b/a HILLSBORO COMMUNITY HOSPITAL, HORTON COMMUNITY HOSPITAL d/b/a HORTON COMMUNITY HOSPITAL, I-70 COMMUNITY HOSPITAL d/b/a I-70 COMMUNITY HOSPITAL, LAUDERDALE COMMUNITY HOSPITAL d/b/a LAUDERDALE COMMUNITY HOSPITAL, OSWEGO COMMUNITY HOSPITAL d/b/a OSWEGO COMMUNITY HOSPITAL, PRAGUE COMMUNITY HOSPITAL d/b/a PRAGUE COMMUNITY HOSPITAL, WASHINGTON COUNTY HOSPITAL d/b/a WASHINGTON COUNTY HOSPITAL, REGIONAL HEALTH PARTNERS LLC d/b/a REGIONAL HEALTH PARTNERS, EMPOWERHMS LLC d/b/a EMPOWERHMS and EMPOWERHMS LLC d/b/a EMPOWERHMS

Sworn to before me this
21st Day of _November_, 2018.

_____
Notary Public



Notary Public State of Florida
Ernesto O Fesser
My Commission GG 117675
Expires 06/21/2021

4

# MERCHANT AGREEMENT TERMS AND CONDITIONS

### I. TERMS OF ENROLLMENT PROGRAM

1.1 **Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to GSL and appoint a Bank acceptable to GSL, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide CMS and/or its authorized agent with all of the information, authorizations and passwords necessary to verify Merchant's receivables, receipts and deposits into the account. Merchant shall authorize GSL and/or its agent to deduct amounts owed to GSL for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to GSL by permitting GSL to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable absent GSL's written consent.

1.2 **Future Purchases.** GSL reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

1.3 **Financial Condition.** Merchant and Guarantor(s) authorize GSL and its agents to investigate their financial responsibility and history, and will provide to GSL any bank or financial statements, tax returns, etc. as GSL deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information GSL is authorized to update such information and financial profiles from time to time as it deems appropriate.

1.4 **Transactional History.** Merchant authorizes GSL and its agents to investigate their financial responsibility and history, and will provide to GSL any authorizations, bank or financial statements, tax returns, etc., as GSL deems necessary in its sole and absolute discretion prior to any time after the execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. Merchant waives, to the maximum extent permitted by law, any claims for damages against GSL or any of its affiliates relating to any investigation undertaken by or on behalf of GSL as permitted by this Agreement or disclosure of information as permitted by this Agreement.

1.5 **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by GSL for monies owed to GSL from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by GSL.

1.6 **No Liability.** In no event will GSL be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of GSL's legal fees and expenses resulting therefrom.

1.7 **Reliance on Terms.** Sections 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, GSL and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

1.8 **Sale of Receipts. (THIS IS NOT A LOAN)** Merchant is selling a portion of a future revenue stream to GSL at a discount, not borrowing money from GSL. There is no interest rate or payment schedule and not time period during which the Purchased Amount must be collected by GSL. If Future Receipts are remitted more slowly than GSL may have anticipated or projected because Merchant's business has slowed down, or if the full Purchased Amount is never remitted because Merchant's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Merchant has not breached this Agreement, Merchant would not owe anything to GSL and would not be in breach of or default under this Agreement. GSL is buying the Purchased Amount of Future Receipts knowing the risks that Merchant's business may slow down or fail, and GSL assumes these risks based on Merchant's representations, warranties, and covenants in this Agreement, Merchant transfers to GSL fill and complete ownership of the Purchased Amount of Future Receipts and Merchant retains no legal or equitable interest therein. Merchant agrees that it will treat Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns. Merchant agrees that GSL is entitled to audit Merchant's accounting records upon reasonable Notice in order to verify compliance. Merchant waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Merchant asserts that this transaction is anything other than a sale of future receipts.

1.9 **Power of Attorney.** Merchant irrevocably appoints GSL as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to GSL from Processor, or in the case of a violation by Merchant of Section 1.2 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation: (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (ii) to receive, endorse, and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to deliver future receipts directly to GSL' and (v) to file any claims or take any action or institute any proceeding which GSL may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to the delivery of the Purchased Amount.

1.10 **Protections against Default.** The following Protections 1 through 8 may be invoked by GSL, immediately and without notice to Merchant in an event of default, as prescribed by Section 3.1 and/or 2.9, OR in the event that: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the GSL electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to GSL; (e) Merchant changes the electronic check processor through which the Receipts are settled from Process or to

another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; **(d)** Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of GSL, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to GSL; **(e)** Merchant demonstrates an intent to default on this agreement by threatening to either cease payments or default on any provision within this Agreement; or **(f)** Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to GSL at law, in equity or otherwise pursuant to this Agreement. **Protection 1.** The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2.** GSL may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). **Protection 3.** Merchant shall, upon execution of this Agreement, deliver to GSL an executed Confession of Judgment in favor of GSL in the amount of the Purchase Amount stated in the Agreement along with legal fees calculated at twenty five percent (25%) of the purchased price less any payments made and interest. Upon breach of any provision in paragraphs 1.10, 2.9, and/or 3.1, GSL may enter that Confession of Judgment as a judgment with the Clerk of the Court and execute thereon. **Protection 4.** GSL may enforce its security interest in the Collateral identified in the Security Agreement herein. **Protection 5.** GSL may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which GSL shall recover judgment against Merchant, Merchant shall be liable for all of GSL's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 6.** Merchant shall, upon execution of this Agreement, deliver to GSL an executed assignment of lease of Merchant's premises in favor of GSL. Upon breach of any provision in this paragraph 1.12, GSL may exercise its rights under such assignment of lease. **Protection 7.** GSL may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the Specified Percentage. **Protection 8.** GSL shall have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor(s), to notify Merchant's credit card processor of the sale of Receipts hereunder and to direct such credit card processor to make payment to GSL of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant hereby grants to GSL an irrevocable power - of-attorney, which power-of-attorney shall be coupled with an interest, and hereby appoints GSL or any of GSL's representatives as Merchant's attorney-in -fact, to take any and all action necessary to direct such new or additional credit card processor to make payment to GSL as contemplated by this Section.

1.11 **Protection of Information**. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes GSL to disclose information concerning Merchant's and each Owner's and/or Guarantor(s)'s credit standing and business conduct only, to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant, Guarantor(s) and Owner(s) hereby waives to the maximum extent permitted by law any claim for damages against GSL or any of its affiliates relating to any (1) investigation undertaken by or on behalf GSL as permitted by this Agreement and/or (ii) disclosure of information as permitted by this Agreement.

1.12 **Confidentiality**. The terms and conditions of this Agreement are proprietary and confidential unless required by law. Merchant shall not disclose this information to anyone other than its attorney, accountant, or similar service provider and then only to the extent such person uses the information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Action. A breach entitles GSL to damages and legal fees as well as temporary restraining order and preliminary injunction without bond.

1.13 **D/B/As**. Merchant hereby acknowledges and agrees that GSL may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between GSL and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES, AND COVENANTS

Merchant represents, warrants, and covenants that as of this date and during the term of this Agreement:

2.1 **Financial Condition and Financial Information**. Any bank statements and financial statements of Merchant that have been furnished to GSL, and future statements that will be furnished to GSL, fairly represent the financial condition of Merchant at such dates, and Merchant will notify GSL immediately if there are material adverse changes, financial or otherwise, in the condition or operation of the Merchant or any change in the ownership of the Merchant. GSL may request statements at any time during the performance of this Agreement and the Merchant shall provide them to GSL within five business days. Furthermore, Merchant represents that all documents, forms and recorded interviews provided to or with GSL are true, accurate and complete in all respects, and accurately reflect Merchant's financial condition and results of operations. Merchant further agrees to authorize the release of any past or future tax returns to Merchant.

2.2 **Governmental Approvals**. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate and lease its properties and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engages and/or will engage hereafter.

2.3 **Authorization**. Merchant and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 **Insurance**. Merchant will maintain business-interruption insurance naming GSL as a loss payee and additional insured in amounts and against risks as are satisfactory to GSL and shall provide GSL with proof of such insurance upon request.

2.5 **Electronic Check Processing Agreement**. Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without GSL's prior written consent. Any such changes shall be a material breach of this Agreement.

2.6 **Change of Name and/or Location or the Sale and/or Closing of the Business**. Merchant will not conduct Merchant's business under any name other than as disclosed to GSL or change any of its places of business without prior written consent of GSL. Merchant will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without (i) the express prior written consent of GSL, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to GSL. Except as disclosed to GSL in writing, Merchant has no current plans to close its business either temporarily, whether for renovations, repairs or any other purpose, or permanently. Merchant agrees that until GSL has received all of the Purchases Amount Merchant will not voluntarily close its business on a temporary basis for renovations, repairs or other purposes. This

---

same shall be in writing and signed by both parties.

4.2 **Assignment**. GSL may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part without prior notices to Merchant.

4.3 **Notices**. All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective ONLY upon receipt.

4.4 **Waiver Remedies**. No failure on the part of GSL to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5  **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of GSL which consent may be withheld in GSL's sole discretion.

4.6  **Governing Law, Venue and Jurisdiction**. This Agreement shall be governed by and construed exclusively in accordance with the laws of the state of New York, without regards to any applicable principles of conflicts of law. If there is any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof or in any dispute arising among the parties, then such litigation shall only be instituted in any court sitting in New York State (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and application made by either party to transfer such proceeding to an Acceptable Forum.

4.7  **Survival of Representation, etc**. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.8  **Entire Agreement and Severability**. This Agreement embodies the entire agreement between Merchant and GSL and supersedes all prior agreements and understandings relating to the subject matter hereof. In case any of the provisions in this Agreement is found to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9  **JURY WAIVER. THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY, AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.**

4.10  **CLASS ACTION WAIVER. THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.**

4.11  **Facsimile Acceptance**. Facsimile signature hereon, or other electronic means reflecting the party's signature hereto, shall be deemed acceptable for all purposes.

## GTR SOURCE LLC - SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: DEQUEEN MEDICAL CENTER INC and the entities listed on annexed "Exhibit A"   D/B/A:   DEQUEEN MEDICAL CENTER

Physical Address: 1306 WEST COLLIN RAY DR.        City DE QUEEN,        State AR        Zip 71832

Federal ID# 20-2251895

### SECURITY AGREEMENT

**Security Interest.**   This Agreement will constitute a security agreement under the Uniform Commercial Code.   Merchant grants to GSL a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant, (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to GSL under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to GSL upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover GSL's entitlements under this Agreement, GSL is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of GSL's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, GSL or an affiliate of GSL. GSL is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by GSL without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, GSL has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets. With respect to such security interests and liens, GSL will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity.   Merchant will obtain from GSL   written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant agrees that this is a contract of recoupment and GSL is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant agrees not to contest or object to any motion for relief from the automatic stay filed by GSL.   Merchant agrees to execute and deliver to GSL such instruments and documents GSL may reasonably   request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. GSL is authorized to execute all such instruments and documents in Merchant's name.

**Additional-Collateral**   To secure Guarantor's payment and performance obligations to GSL under the Guaranty, the Guarantor hereby grants GSL a security interest   in

_____(the

"Additional Collateral"). Guarantor understands that GSL will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Merchant and Guarantor each acknowledge and agree that any security interest granted to GSL under any other agreement between Merchant or Guarantor and GSL (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as GSL deems necessary to perfect or maintain GSL's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes GSL to file any financing statements deemed necessary by GSL to perfect or maintain GSL's security interest, which financing statement may contain notification that Merchant and/or Guarantor have granted a negative pledge to GSL with respect to the Collateral, and the Additional Collateral, and that any subsequent lienor may be tortuously interfering with GSL's rights. Merchant and Guarantor shall be liable for, and GSL may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by GSL in protecting, preserving and enforcing GSL's security interest and rights.

**Negative Pledge**. Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease**. GSL shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, GSL may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that GSL may enter into an agreement with Merchant's landlord giving GSL the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies**. Upon any Event of Default, GSL may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to GSL, whether by acceleration or otherwise.

### GUARANTY

**Personal Guaranty of Performance**. The undersigned Guarantor(s) hereby guarantees to GSL, Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in the Merchant Agreement in Sections thereof 2.3, 2.5, 2.6, 2.9, 2.10, 2.11, 2.12, 2.13 and 2.14, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor Waivers**. In the event of a breach of the above, GSL may seek recovery from Guarantors for all of GSL's losses and damages by enforcement of GSL's   rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral GSL may hold pursuant to this Agreement or any other guaranty.

GSL does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified   of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) GSL's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to GSL. In addition, GSL may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to GSL; (ii) release Merchant from its obligations to GSL; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to GSL under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that

# EXHIBIT B



**Business Statement**

P.O. Box 1800
Saint Paul, Minnesota  55101-0800

9238        TRN                    S          Y        ST01

Account Number:

████████ 3986

Statement Period:

Jan 2, 2019
through
Jan 31, 2019

Page 1 of 11



000012618 02 SP       106481895827636 S
CAH ACQUISITION COMPANY # 6 LLC
I-70 COMMUNITY HOSPITAL
1700 SWIFT AVE STE 200
N KANSAS CITY MO  64116-3834

☎                                    *To Contact U.S. Bank*

**Commercial Customer
Service:**                                1-866-329-7770

**U.S. Bank accepts Relay Calls**

**Internet:**                              *usbank.com*

## INFORMATION YOU SHOULD KNOW

**Effective February 11, 2019** the **"Your Deposit Account Agreement"** booklet will include an update that may affect your rights. Starting February 11, to download a copy of the revised booklet by logging in to our secure website at **usbank.com/tmtermsandconditions** using access code **terms2019**. You may also call your customer service team at the phone number listed at the top of this statement to request a copy.

The main update to note in the revised **"Your Deposit Account Agreement"** booklet section, and sub section, is:

- In section "Terms Applicable to all Deposit Accounts", there is an update in the "Arbitration" subsection now titled "Resolution of Disputes by Arbitration".

## ANALYZED CHECKING                                    *Member FDIC*

U.S. Bank National Association                    Account Number ████████-3986

### Account Summary

|                                    | # Items |    |
|------------------------------------|---------|----|
| Beginning Balance on Jan 2         |         | $ ████ |
| Other Deposits                     | 205     | ████ |
| Other Withdrawals                  | 86      | ████ |
| **Ending Balance on  Jan 31, 2019** |         | **$ ████** |

### Other Deposits

| Date | Description of Transaction | Ref Number | Amount |
|------|----------------------------|------------|--------|
| ████ | ████ | | ████ |
| ████ | ████ | | ████ |
| ████ | ████ | | ████ |
| ████ | ████ | | ████ |
| ████ | ████ | | ████ |
| ████ | ████ | | ████ |
| ████ | ████ | | ████ |
| ████ | ████ | | ████ |
| ████ | ████ | | ████ |
| ████ | ████ | | ████ |



**Business Statement**

CAH ACQUISITION COMPANY # 6 LLC
I-DOCMGMT DEPT
1700 SWIFT AVE STE 200
N KANSAS CITY MO  64116-3834

Account Number:
3986

Statement Period:
Jan 2, 2019
through
Jan 31, 2019

Page 9 of 11

## ANALYZED CHECKING                                                  (CONTINUED)
U.S. Bank National Association

Account Number ▮▮▮▮3986

**Other Withdrawals (continued)**

| Date | Description of Transaction | Ref Number | Amount |
|------|----------------------------|------------|--------|



| Jan 15 | Electronic Withdrawal | From GTR Source LLC | | 11,999.00- |
| | REF=190150082904180N00 | 9371866690848245717281568099 | | |



CAH ACQUISITION COMPANY # 6 LLC
1700 SWIFT AVE STE 200
N KANSAS CITY MO 64116-3834



Statement Period:
Jan 2, 2019
through
Jan 31, 2019

---

# ANALYZED CHECKING (CONTINUED)
U.S. Bank National Association

**Account Number** 3986

**Other Withdrawals (continued)**

| Date | Description of Transaction | | Ref Number | Amount |
|------|---------------------------|---|-----------|--------|
| Jan 18 | Electronic Withdrawal<br>REF=190180043616510N00 | From GTR Source LLC<br>9371866690848245717281611725 | | 2,999.75- |
| Jan 22 | Electronic Withdrawal<br>REF=190220035977210N00 | From GTR Source LLC<br>9371866690848245717281625857 | | 2,999.75- |
| Jan 22 | Electronic Withdrawal<br>REF=190220035977270N00 | From GTR Source LLC<br>9371866690848245717281629445 | | 2,999.75- |
| Jan 23 | Electronic Withdrawal<br>REF=190230066244990N00 | From GTR Source LLC<br>9371866690848245717281651378 | | 2,999.75- |



# EXHIBIT C



**Business Statement**

Account Number:
<span style="background:red">REDACTED</span> 3986

Statement Period:
Apr 1, 2019
through
Apr 30, 2019

Page 1 of 2

U.S. Bank National Association
P.O. Box 1800
Saint Paul, Minnesota 55101-0800

9238    TRN    S    Y    ST01

000048031 01 SP    000638057631897 S
CAH ACQUISITION COMPANY # 6 LLC
I-70 COMMUNITY HOSPITAL
1700 SWIFT AVE STE 200
N KANSAS CITY MO 64116-3834

☎ To Contact U.S. Bank

**Commercial Customer Service:**    1-866-329-7770

**U.S. Bank accepts Relay Calls**

**Internet:**    usbank.com

## ANALYZED CHECKING

*Member FDIC*

U.S. Bank National Association

Account Number ████-3986

### Account Summary

|  | # Items |  |
|---|---|---|
| Beginning Balance on Apr 1 |  | $ |
| Other Deposits | 14 |  |
| Other Withdrawals | 2 |  |
| **Ending Balance on Apr 30, 2019** |  | $ ██ |

### Other Deposits



| Date | Description of Transaction | Ref Number | Amount |
|---|---|---|---|
| <span style="background:red">REDACTED</span> |  |  |  |

### Other Withdrawals

| Date | Description of Transaction | Ref Number | Amount |
|---|---|---|---|
| Apr 1 | NY GARNISHMENT GT          R SOURCE LLC |  | $ 71,545.85- |
| Apr 15 | <span style="background:red">REDACTED</span> |  |  |
|  | **Total Other Withdrawals** | **$** | ██ |

