**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

IN RE:

**CAH ACQUISITION COMPANY 6, LLC**
**d/b/a I-70 COMMUNITY HOSPITAL,**

**Debtor.**

Case No. 19-01300-5-JNC

Chapter 11

---

**MOTION FOR ORDER REQUIRING DEBTOR TO EXECUTE SETTLEMENT**
**AGREEMENT AND, SHOULD THE DEBTOR FAIL TO DO SO, DESIGNATING**
**TRUSTEE AS PARTY TO EXECUTE THE SETTLEMENT AGREEMENT ON**
**BEHALF OF THE DEBTOR**

**NOW COMES** Thomas W. Waldrep, Jr., trustee (the "Trustee") for CAH Acquisition

Company 6, LLC d/b/a I-70 Community Hospital (the "Debtor"), by and through his undersigned

counsel, and hereby moves the Court, pursuant to 11 U.S.C. § 105 and Fed. R. Civ. P. 70,

incorporated into this matter by Fed. R. Bankr. P. 7070, to order the Debtor to execute the

Settlement and Release Agreement (the "Settlement Agreement"), attached hereto as **Exhibit A**.

The Trustee believes that the settlement reached at the mediation is fair, reasonable, and in the best

interest of the Debtor's bankruptcy estate.  In support thereof, the Trustee states as follows:

## BACKGROUND

1.      On March 21, 2019, the Debtor filed a voluntary petition for relief under Chapter

11 of the Bankruptcy Code before this Court (the "Petition Date").

2.      On March 29, 2019, the Court entered an Order approving the appointment of the

Trustee.  The Trustee is the duly appointed, qualified, and acting trustee of the Debtor's estate.

3.      Since his appointment on March 29, 2019, the Trustee has administered the estate

of the Debtor, as well as six other affiliated debtors in bankruptcy cases currently pending before

this Court (collectively, the "Affiliated Debtors").  *See Order Directing Joint Administration of Chapter 11 Cases*, Case No. 19-00730.  [Dkt. No. 75].

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of these Contested Matters (defined below) and the Avoidance Action (defined below) pursuant to 28 U.S.C. § 1334, which grants exclusive and original jurisdiction on matters arising under Title 11 of the United States Code in the Eastern District of North Carolina to the United States District Court.  Pursuant to 28 U.S.C. § 157(a), United States District Courts have the authority to refer any and all cases arising under Title 11 to the bankruptcy judges of this district. Standing Order 84-PLR-4, entered on August 3, 1984, refers all cases arising under Title 11 to the bankruptcy court in this district.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. §§ 1408(2) and 1409(a).  This Court has the power and authority to enter a final order in these Contested Matters (defined below) and in the Avoidance Action (defined below) pursuant to, among other authorities, 11 U.S.C. § 105 and Fed. R. Civ. P. 70, incorporated into this matter by Fed. R. Bankr. P. 7070.

## FACTUAL BACKGROUND AND STATE OF THE PLEADINGS

5.      The Debtor's sole business is the ownership and operation of the I-70 Community Hospital located in Sweet Springs, Missouri (the "Hospital").

6.      The Hospital provided the surrounding community with essential health care services, including diagnostic and therapeutic services; 24-hour emergency care; convenient and specialized outpatient resources; laboratory, physical rehabilitation, acute care, swing bed, cardiology, and other services.

7.    Prior to the Petition Date, First Liberty made an approximately $9.3 million loan to the Debtor (the "Loan").  *See Motion For Relief From the Automatic Stay or For Adequate Protection Pursuant to 11 U.S.C. § 362(a)* [Dkt. No. 128] (the "Motion for Relief"). First Liberty asserts its Loan is secured by a first-priority lien on the Debtor's real property and certain of the Debtor's personal property assets.

8.    First Liberty filed a UCC-1 Financing Statement in Delaware on February 22, 2019 (the "Transfer").  The Trustee filed an adversary proceeding against First Liberty to, among other things, avoid the Transfer. *See Adv. Pro. Case No. 19-00084-5* (the "Avoidance Action"). The time to answer or otherwise respond to the complaint in the Avoidance Action has not yet passed.

9.    On or about February 25, 2019, First Liberty filed a lawsuit against the Debtor in the Circuit Court of Saline County, Missouri (the "State Court").  Contemporaneously therewith, First Liberty sought the appointment of a state court receiver over the Debtor, its property, and its operations.  That action is pending before the State Court under Case Number 19SA-CV00196 (the "Receivership Action").

10.    On February 28, 2019 (the "Receivership Date"), the State Court appointed Cohesive Healthcare Management & Consulting, LLC ("Cohesive") as the receiver of the Debtor.

11.    On March 21, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before this Court.

12.    On April 23, 2019, First Liberty filed a Motion to Dismiss Case [Dkt. No. 56].

13.    On April 24, 2019, First Liberty, by and through counsel, filed an Agreed Stipulation to Removal and Substitution of Receiver before the State Court in the Receivership Action (the "Agreed Stipulation").

14.     The Agreed Stipulation was filed with the State Court to seek entry of an Agreed Order for the Removal of Receiver and Appointment of Successor Receiver (the "Agreed Order"). Per the Agreed Stipulation and Agreed Order, First Liberty contends that Cohesive resigned as receiver in the Receivership Action, and the State Court appointed the Receiver in Cohesive's stead.  The Trustee and the Debtor dispute this contention.  The State Court entered the Agreed Order on April 25, 2019.

15.     On April 25, 2019, First Liberty filed the Amended Motion to Dismiss Case at Dkt. No. 62 (the "Amended Motion to Dismiss").  The Amended Motion to Dismiss added the Receiver as a movant seeking relief.

16.     The Trustee asserts that the replacement of Cohesive and appointment of the Receiver violated the provisions of the automatic stay.  *See Trustee's Motion for Contempt, Sanctions, and Attorneys' Fees Against Putative Receiver and Creditor First Liberty Bank For Willful Violations of the Automatic Stay* [Dkt. No. 79] (the "Motion for Sanctions").  First Liberty responded to the Motion for Sanctions at Docket No. 96.  The Court has already issued a preliminary ruling [Dkt. No. 103] (the "Preliminary Order") determining that the Trustee has sole authority to represent the Debtor with respect to the CMS appeal, as the same is described in the Preliminary Order (the "CMS Appeal").

17.     First Liberty also filed two motions on June 3 and 4, 2019: (i) the Motion for Relief; and (ii) a *Motion for Determination That Debtor Is a Single Asset Real Estate Debtor as Defined in 11 U.S.C. § 101(51B) and Subject to the Provisions of 11 U.S.C. § 362(d)(3)* [Dkt. No. 130] (the "SARE Motion").  Ten days later, on June 14, 2019, First Liberty filed an *Emergency Motion to Compel Thomas W. Waldrep, Jr., Chapter 11 Trustee, to Abandon Real Property* [Dkt. No. 160] (the "Motion to Compel Abandonment").  The Trustee responded to the Motion for Relief [Dkt.

No. 172], the SARE Motion [Dkt. No. 184], and the Motion to Compel Abandonment [Dkt. No. 203].

18.    The Trustee, First Liberty and the Debtor each filed dispositive motions pursuant to Fed. R. Bankr. 7056, Fed. R. Bankr. P. 9014, and Fed. R. Civ. P. 56 with respect to the Amended Motion to Dismiss.  The Trustee's Motion for Summary Judgment is at Docket. No. 180, and the Brief in Support of the Trustee's Motion for Summary Judgment is at Docket. No. 181.  First Liberty's Motion for Summary Judgment is at Docket. No. 179.  The Debtor's Motion for Summary Judgment is at Docket. No. 182.

19.    On July 17, 2019, the parties conducted a mediation at the law offices of Blaney, Tweedy, Tipton & Hiersche PLLC, 204 N Robinson Ave, Suite 1250, Oklahoma City, OK 73102 with the Honorable Joan Feeney (Ret.) acting as the mediator.

20.    Pursuant to the Court's order entered on June 28, 2019 (Dkt. No. 192) (the "Mediation Order"), "the Trustee . . . shall represent the interests of the Debtor at the Mediation".

21.    After extensive negotiations and direct discussions between the parties, and with the mediator's invaluable assistance, the parties reached the Settlement.

22.    After the Mediation, and per the terms set forth in the Memorandum of Settlement Agreement, the parties negotiated the terms of the *Settlement and Release Agreement*, a copy of which is attached hereto as **Exhibit A** and is incorporated herein by reference (the "Settlement Agreement").

23.    The Settlement Agreement addresses and resolves all currently outstanding contested matters[1] and the Avoidance Action.

---

[1] Those contested matters (the "Contested Matters") are, along with all responses filed in connection therewith, as follows: (i) the Motion to Dismiss and Amended Motion to Dismiss; (ii) the Motion for Relief; (iii) the Motion for Sanctions; (iv) the SARE Motion; and (v) the Motion to Compel Abandonment.

24.     The Settlement is conditioned upon approval by this Court.

25.     The Trustee filed a motion to approve the Settlement on August 15, 2019 (Dkt. No. 247). The Debtor despite request has not signed the Settlement Agreement.

26.     The Trustee signed the Settlement Agreement on behalf of the Debtor pursuant to the authority granted in the Mediation Order. The Trustee, however, requests that the Debtor be ordered to sign the Settlement Agreement not later than seven (7) days from the entry of an order approving this Motion. If the Debtor fails or refuses to sign the Agreement by that date, the Trustee further requests that the Court enter an order designating the Trustee pursuant to 11 U.S.C. § 105 and Fed. R. Civ. P. 70, incorporated into this matter by Fed. R. Bankr. P. 7070, to execute the Settlement Agreement on behalf of the Debtor, ratifying the Trustee's previous signature on the Settlement Agreement, and authorizing the Trustee to perform the Debtor's obligations and duties under the Settlement Agreement.

27.     Rule 7070 applies to the Avoidance Action, and its settlement, but would typically not apply to the Contested Matters. See Fed. R. Civ. P. 9014(c). However, "[t]he court may at any stage of a particular matter direct that one or more of the other rules in Part VII [of the Federal Rules of Bankruptcy Procedures] shall apply." Id.

**WHEREFORE**, for the reasons set forth herein, the Trustee prays that the Court enter an order (a) directing that Fed. R. Bankr. P. 7070 applies to the Contested Matters; (b) directing that the Debtor shall execute the Settlement Agreement not later than seven (7) days from the entry of an order approving this Motion; (c) that if the Debtor fails or refuses to sign the Agreement by that date, designating the Trustee pursuant to 11 U.S.C. § 105 and Fed. R. Civ. P. 70, incorporated into this matter by Fed. R. Bankr. P. 7070, to execute the Settlement Agreement on behalf of the Debtor, ratifying the Trustee's previous signature on the Settlement Agreement, and authorizing the

Trustee to perform the Debtor's obligations and duties under the Settlement Agreement; and (d) granting such other and further relief as is just.

Respectfully submitted, this the 20th day of November, 2019.

**WALDREP LLP**

/s/ *James C. Lanik*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC State Bar No. 39871)
Francisco T. Morales (NC State Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: khendren@hendrenmalone.com
          rredwine@hendrenmalone.com

*Attorneys for the Trustee*

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CAH ACQUISITION COMPANY 6, LLC d/b/a** | ) | **Case No.  19-01300-5-JNC** |
| **I-70 COMMUNITY HOSPITAL,** | ) | |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |

### NOTICE OF MOTION FOR ORDER REQUIRING DEBTOR TO EXECUTE SETTLEMENT AGREEMENT AND, SHOULD THE DEBTOR FAIL TO DO SO, DESIGNATING TRUSTEE AS PARTY TO EXECUTE THE SETTLEMENT AGREEMENT ON BEHALF OF THE DEBTOR

NOTICE IS HEREBY GIVEN of the **MOTION FOR ORDER REQUIRING DEBTOR TO EXECUTE SETTLEMENT AGREEMENT AND, SHOULD THE DEBTOR FAIL TO DO SO, DESIGNATING TRUSTEE AS PARTY TO EXECUTE THE SETTLEMENT AGREEMENT ON BEHALF OF THE DEBTOR** (the "Motion") filed in the above captioned case; and,

FURTHER NOTICE IS HEREBY GIVEN that this Motion may be allowed provided no responses and request for a hearing is made by a party in interest in writing to the Clerk of this Court within **FOURTEEN (14) DAYS** from the date of this notice; and,

FURTHER NOTICE IS HEREBY GIVEN, that if a response and a request for a hearing is filed by a party in interest in writing within the time indicated, a hearing will be conducted on this Motion thereto at a date, time and place to be later set by the Court and all interested parties will be notified accordingly. If no request for a hearing is timely filed, the Court may rule on the Motion thereto ex parte without further notice.

DATED: November 20, 2019

**WALDREP LLP**

/s/ James C. Lanik
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC State Bar No. 39871)
Francisco T. Morales (NC State Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440

1

Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: khendren@hendrenmalone.com
       rredwine@hendrenmalone.com

*Attorneys for the Trustee*

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that copies of the foregoing **MOTION FOR ORDER REQUIRING DEBTOR TO EXECUTE SETTLEMENT AGREEMENT AND, SHOULD THE DEBTOR FAIL TO DO SO, DESIGNATING TRUSTEE AS PARTY TO EXECUTE THE SETTLEMENT AGREEMENT ON BEHALF OF THE DEBTOR** have been served upon each of the parties listed below either electronically or via U.S. Mail First Class Mail.

## **ELECTRONIC SERVICE VIA CM/ECF**

To:

Rayford K. Adams, III on behalf of Debtor

Jason L. Hendren on behalf of Trustee and Plaintiff Thomas W. Waldrep, Jr.

Rebecca F. Redwine on behalf of Trustee and Plaintiff Thomas W. Waldrep, Jr.

Benjamin E.F.B. Waller on behalf of Trustee Thomas W. Waldrep, Jr.

James C. Lanik on behalf of Trustee and Plaintiff Thomas W. Waldrep, Jr.

Jennifer B. Lyday on behalf of Trustee and Plaintiff Thomas W. Waldrep, Jr.

Thomas W. Waldrep, Jr. on behalf of Trustee and Plaintiff Thomas W. Waldrep, Jr.

Francisco T. Morales on behalf of Trustee and Plaintiff Thomas W. Waldrep, Jr.

Marjorie K. Lynch on behalf of Bankruptcy Administrator Marjorie K. Lynch

Kirstin E. Gardner on behalf of Bankruptcy Administrator Marjorie K. Lynch

John Paul H. Cournoyer on behalf of Creditor Sun Finance, Inc., Creditor Paul L. Nusbaum, Creditor Steven F. White, and Interested Party Rural Community Hospitals of America, LLC

Steven A. Ginther on behalf of Creditor Missouri Department of Revenue

David J Haidt on behalf of Creditor First Liberty Bank and Defendant First Liberty Bank

R. Andrew Hutchinson on behalf of Defendant U.S. Bank National Association

Erno D. Lindner on behalf of Defendant U.S. Bank National Association

Nicholas Zluticky on behalf of Creditor First Liberty Bank and Interested Party Bank of Hays

Christopher J. Waivers on behalf of Creditor Hospital Equipment Rental Company

**<u>ELECTRONIC SERVICE VIA ELECTRONIC MAIL</u>**

To:

Sharon L. Stolte                              (via email: sstolte@sandbergphoenix.com)
Counsel for Receiver

This the 20th day of November, 2019.

**WALDREP LLP**

/s/ *James C. Lanik*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC State Bar No. 39871)
Francisco T. Morales (NC State Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and -**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: jhendren@hendrenmalone.com
         rredwine@hendrenmalone.com

*Attorneys for the Trustee*

## SETTLEMENT AND RELEASE AGREEMENT

This SETTLEMENT AND RELEASE AGREEMENT (this "Agreement"), is entered into as of August 14, 2019, among First Liberty Bank, an Oklahoma state banking corporation (the "Bank"), Brent King, not in his individual capacity, but solely in his capacity as the court-appointed receiver for CAH Acquisition Company 6, LLC (the "Receiver"), CAH Acquisition Company 6, LLC, a Delaware limited liability company (the "Debtor"), and Thomas Waldrep, Jr., not in his individual capacity, but solely in his capacity as the court-appointed chapter 11 trustee for the Debtor in the Bankruptcy Case (defined below) (the "Trustee"). The Bank, the Receiver, the Debtor, and the Trustee are referred to in this Agreement individually as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on or about December 6, 2010, the Bank made a loan to the Debtor in the original principal amount of $9.3 million (the "Bank Loan");

WHEREAS, the Bank Loan is evidenced by the following documents executed by the Debtor in favor of the Bank:  (i) Promissory Note dated December 6, 2010 in the principal amount of $9.3 million; (ii) Loan Agreement dated December 6, 2010; (iii) Deed of Trust, Assignment of Leases and Rents and Security Agreement dated December 6, 2010; and (iv) Security Agreement dated December 6, 2010 (collectively, in addition to all documents executed in connection therewith or related thereto, the "Bank Loan Documents");

WHEREAS, the Bank Loan Documents granted the Bank a lien on, *inter alia*, the real property located at 105 Hospital Drive, Sweet Springs, Missouri and more fully described in the above-described Deed of Trust (the "Real Estate");

WHEREAS, the Bank contends, and the Trustee disputes, that the Bank Loan Documents properly perfected the Bank's lien on, *inter alia*, all personal property assets of the Debtor (the "Personal Property");

WHEREAS, the I-70 Community Hospital is located on the Real Estate (the "Hospital");

WHEREAS, prior to February 15, 2019, the Debtor engaged a management company to operate the Hospital on the Real Estate;

WHEREAS, the Hospital shut down operations on or about February 15, 2019;

WHEREAS, on February 25, 2019, the Bank filed a Verified Petition in the Circuit Court of Saline County, Missouri (the "State Court"), thereby commencing a lawsuit against the Debtor for the immediate appointment of a receiver to take control of the Hospital, which lawsuit is captioned *First Liberty Bank v. CAH Acquisition Company 6, LLC*, Case No. 19SA-CV00196 (the "State Court Action");

WHEREAS, on February 28, 2019, the State Court entered an Order for Appointment of Receiver in the State Court Action (the "Receivership Order"), appointing Cohesive Healthcare

Management + Consulting, LLC ("Cohesive") as the receiver for the Debtor to take control of the Hospital;

WHEREAS, on or about March 7, 2019, the Center for Medicare and Medicaid Services ("CMS") terminated the Hospital's CMS provider agreement (the "CMS Termination");

WHEREAS, on March 21, 2019, the Debtor filed a petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court"), thereby commencing a bankruptcy case captioned In re CAH Acquisition Company 6, LLC, Case No. 19-01300-5 (the "Bankruptcy Case");

WHEREAS, on March 29, 2019, the Bankruptcy Court appointed the Trustee as the chapter 11 trustee for the Debtor in the Bankruptcy Case;

WHEREAS, on April 23, 2019, the Bank filed a Motion to Dismiss Chapter 11 Case and Incorporated Memorandum of Law (ECF Doc. 56) (the "Original Motion to Dismiss"), seeking to dismiss the Bankruptcy Case;

WHEREAS, on April 25, 2019, the State Court entered an Agreed Order for Removal of Receiver and Appointment of Successor Receiver, removing Cohesive as receiver for the Debtor and replacing Cohesive with the Receiver (the "Replacement Receiver Order");

WHEREAS, the Trustee alleges that the entry of the Replacement Receiver Order and appointment of the Receiver as receiver for the Debtor was a violation of the automatic stay under Section 362(a) of the Bankruptcy Code;

WHEREAS, on April 30, 2019, the Bank and the Receiver filed an Amended Motion to Dismiss Chapter 11 Case and Incorporated Memorandum of Law (ECF Doc. 62) (the "Amended Motion to Dismiss" and, together with the Original Motion to Dismiss, the "Motion to Dismiss");

WHEREAS, on May 3, 2019, both the Receiver and the Trustee filed separate administrative appeals of the CMS Termination (each a "[Party's] CMS Appeal");

WHEREAS, the Trustee alleges, and the Bank and the Receiver dispute, that the Receiver's commencement of the Receiver's CMS Appeal was a violation of the automatic stay under Section 362(a) of the Bankruptcy Code;

WHEREAS, on May 10, 2019, the Trustee filed in the Bankruptcy Case a Motion for Contempt, Sanctions, and Attorneys' Fees Against Putative Receiver and Creditor First Liberty Bank for Willful Violations of the Automatic Stay (ECF Doc. 79) (the "Stay Violation Motion"), seeking, inter alia, monetary judgments against the Bank and the Receiver for alleged violations of the automatic stay under Section 362(a) of the Bankruptcy Code;

WHEREAS, on May 16, 2019, the Bankruptcy Court entered its Order on Preliminary Hearing on Trustee's Motion for Sanctions for Violation of Automatic (ECF Doc. 103) (the "Preliminary Stay Violation Order"), designating the Trustee as the sole party to pursue the Trustee's CMS Appeal and instructing the Receiver to withdraw the Receiver's CMS Appeal;

2

WHEREAS, pursuant to the Preliminary Stay Violation Order, the Receiver withdrew the Receiver's CMS Appeal and the Trustee is currently the sole party pursuing the Trustee's CMS Appeal;

WHEREAS, on June 3, 2019, the Bank filed a Motion for Relief From the Automatic Stay or for Adequate Protection Pursuant to 11 U.S.C. § 362(a) (ECF Doc. 128) (the "Stay Relief Motion") seeking relief from the automatic stay to enforce its rights and remedies with respect to the Real Estate;

WHEREAS, on June 4, 2019, the Bank filed a Motion for Determination That Debtor is a Single Asset Real Estate Debtor as Defined in 11 U.S.C. § 101(51B) and Subject to the Provisions of 11 U.S.C. § 362(d)(3) (ECF Doc. 130) (the "SARE Motion") seeking entry of an order declaring that the Debtor is a single asset real estate entity as defined under the Bankruptcy Code;

WHEREAS, on June 7, 2019, the Trustee filed a Complaint in the Bankruptcy Court against the Bank, seeking to avoid the Bank's lien on the Personal Property, captioned Thomas W. Waldrep, Jr., Chapter 11 Trustee v. First Liberty Bank, Adv. No. 19-00084-5 (the "Adversary Proceeding");

WHEREAS, on June 14, 2019, the Bank filed an Emergency Motion to Compel Thomas W. Waldrep, Jr., Chapter 11 Trustee, to Abandon Real Property (ECF Doc. 160) (the "Motion to Compel Abandonment"), seeking entry of an order compelling the Trustee to abandon the Real Estate;

WHEREAS, on July 17, 2019, the Parties participated in a mediation (the "Mediation") to resolve all existing disputes among the Parties described herein and all other potential disputes, claims and causes of action the Parties may have against one another;

WHEREAS, at the Mediation the parties entered into a Memorandum of Settlement Agreement (the "Settlement Memorandum"), a copy of which is attached hereto as Schedule 1;

WHEREAS, the Parties wish to incorporate the Settlement Memorandum into this Agreement and wish to more fully and thoroughly set out the agreements reached at the Mediation by entering into this Agreement;

WHEREAS, this Agreement and the documents executed in connection therewith, including but not limited to Settlement Motion and the Settlement Order (defined below), are the culmination of extensive discussions, litigation, and, ultimately, compromises made between the Bank, the Receiver, the Trustee and the Debtor;

WHEREAS, the Parties, after advice of counsel, acknowledge that as a component of the resolution of methods for repayments of the Bank Loan as set forth in this Agreement, have agreed to the provisions of this Agreement in exchange for which the Parties have agreed to, among other things, withdraw their respective motions and responses, to dismiss the Adversary Proceeding, and to continue the Stay Relief Motion in order to give the Trustee an opportunity to run a sale process on the terms and conditions provided herein; and

CORE/3515738.0002/153749651.3

WHEREAS, the Parties wish to resolve all existing disputes on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual promises, and agreements contained herein, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

**AGREEMENT**

1. **Bankruptcy Court Approval.**

   1.1.    The Parties each acknowledge that this Agreement must be approved by the Bankruptcy Court.  The terms and conditions of, and the consideration described in, this Agreement shall be conditioned on the entry of a Final Order approving this Agreement and authorizing the Trustee to enter into this Agreement.

   1.2.    Within three (3) business of the Parties agreeing on the final terms of this Agreement, the Trustee shall file a motion in the Bankruptcy Case under Federal Rule of Bankruptcy Procedure 9019 for approval of this Agreement by the Bankruptcy Court (the "Settlement Motion."). The Settlement Motion shall be in substantially the form attached as Exhibit A to this Agreement. The Trustee shall seek an expedited hearing on the Settlement Motion to have the Settlement Motion set for hearing as soon as the Bankruptcy Court allows.

   1.3.    The Trustee shall use his best efforts to obtain approval of this Agreement. Upon the Bankruptcy Court's approval of the Settlement Motion, the Trustee shall submit to the Bankruptcy Court an order granting the Settlement Motion (the "Settlement Order"). The Settlement Order shall be in substantially the form attached as Exhibit B to this Agreement. No Party shall file an objection to the Settlement Motion or take any position on the Settlement Motion other than to support the entry of the Settlement Order.  In the event that the Bankruptcy Court makes any material changes to the Settlement Order or requests that the Trustee make any material changes to the Settlement Order, the Parties shall work together to make such changes as are acceptable to all Parties to this Agreement.

   1.4.    This Agreement shall become effective on the first day that the Settlement Order becomes a Final Order (the "Effective Date"). For purposes of this Agreement, the term "Final Order" shall mean the following:  the entry of the Settlement Order by the Bankruptcy Court, which Settlement Order has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari or leave to appeal has expired and no appeal or petition for certiorari or motion for leave to appeal has been timely taken, or as to which any appeal that has been taken or any petition for certiorari or motion for leave to appeal that has been or may be filed has been resolved by the highest court to which the Settlement Order was appealed or from which certiorari or leave to appeal was sought; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure may be filed relating to the Settlement Order shall not prevent the Settlement Order from

being a Final Order. Upon the Settlement Order becoming a Final Order, it shall be deemed final, res judicata, and collateral estoppel in this Bankruptcy Case as to all provisions of this Agreement.

1.5.   Subject to the provisions of Section 11.3 below, the Settlement Order shall provide that the Bankruptcy Court shall abstain from hearing any contest or objection to the entry of the Lift Stay Order (defined below) and any attempt to modify, amend, or reconsider the Lift Stay Order, pursuant to the authority granted in 28 U.S.C. § 1334(c) and Sections 105 and 305 of the Bankruptcy Code. The Settlement Order shall constitute a Final Order of abstention under such statutes that is not subject to review or appeal.

1.6.   Notwithstanding anything herein to the contrary, and pursuant to the terms of the Settlement Order, the Trustee and the Debtor shall be barred from seeking, whether pursuant to §§ 362(a) or 105 of the Bankruptcy Code, to have the automatic stay apply to the Bank's actions to collect from any guarantor of the debts owing by the Debtor to the Bank.

2.   **Withdrawal of Motions.** Within five (5) business days of the Effective Date, the Parties shall file notices of withdrawal the following motions with prejudice and with all parties to bear their own costs, expenses and attorneys' fees:

2.1.   The Bank and the Receiver shall file a notice of withdrawal of the Motion to Dismiss;

2.2.   The Bank shall file a notice of withdrawal of the SARE Motion;

2.3.   The Bank shall file a notice of withdrawal of the Motion to Compel Abandonment; and

2.4.   The Trustee shall file a notice of withdrawal of the Stay Violation Motion.

3.   **The Trustee's Sale Process.**

3.1.   The Trustee shall have one hundred twenty (120) days from the Effective Date (the "Sale Motion Deadline") to: (i) obtain a signed purchase agreement for the sale of the Hospital on the terms and conditions set forth herein (the "Purchase Agreement"); and (ii) file a motion to approve a sale of the Hospital under the terms and conditions of the Purchase Agreement pursuant to Section 363(b) and (f) of the Bankruptcy Code (the "Sale Motion").

3.2.   The Purchase Agreement shall contain the following terms and conditions:

3.2.1.   A minimum gross sale price for the Hospital of $3.4 million in cash (the "Minimum Purchase Price");

3.2.2.   No financing contingencies;

5

3.2.3.    No contingencies that would cause the sale to close after the Closing Deadline (defined below);

3.2.4.    Require that the Purchase Agreement may not be modified except upon the written agreement of the parties to the Purchase Agreement and either written approval by the Bank or entry of an order of the Bankruptcy Court after notice to the Bank and a hearing.

3.3.    The Purchase Agreement shall be signed by the purchaser on or before the Sale Motion Deadline and shall be accompanied with proof of the purchaser's ability to close on the purchase of the Hospital on the terms and conditions set forth in the Purchase Agreement ("Proof of Ability to Close"). The Trustee shall provide the signed Purchase Agreement and the Proof of Ability to Close as soon as possible after receipt by the Trustee. The Proof of Ability to Close must be in a form reasonably satisfactory to the Bank and the Trustee. Any dispute between the Bank and the Trustee as to whether the Proof of Ability to Close is reasonably satisfactory shall be resolved by Judge Joan Feeney (ret.) as arbitrator upon written submissions by the Bank and the Trustee. No other Party shall have a right to make any submission on this issue.

3.4.    Conditioned on the Trustee meeting the requirements set forth in the above Sections 3.1 through 3.3, on or before the Sale Motion Deadline and the absence of any Event of Default under this Agreement, the Trustee shall have ninety (90) days from the filing of the Sale Motion (the "Closing Deadline") to close the sale of the Hospital on the terms and conditions set forth in the Purchase Agreement, as may be modified by the Bankruptcy Court after notice and a hearing (the "Closing").

3.5.    At the Closing, the proceeds from the sale of the Hospital, after the payment of real estate taxes and customary closing costs (the "Sale Proceeds"), shall be distributed as follows:

3.5.1.    Estate Proceeds. Subject to the terms of the Bank Trustee Loan (defined below), $200,000.00 shall be paid to the Debtor's bankruptcy estate and shall be delivered to the Trustee to be deposited in the Trustee's debtor-in-possession account for the Debtor (the "Estate Proceeds").

3.5.2.    Trustee Commission. The Trustee shall be paid a commission as calculated, and in an amount not to exceed the amount allowed, under Section 326(a) of the Bankruptcy Code (the "Trustee Commission"). By way of example, if the final purchase price is $3.4 million, the Trustee Commission calculated under Section 326(a) of the Bankruptcy Code would equal, and would not exceed, $125,250.00.

3.5.3.    Bank Proceeds. The remaining amount of the Sale Proceeds shall be disbursed to the Bank in satisfaction of its lien on the Hospital.

3.5.4.    Proceeds for Higher Purchase Price. In the event that the purchase price for the Hospital exceeds the Minimum Purchase Price, the amount of

the purchase price that exceeds the Minimum Purchase Price shall be disbursed 50% to the Bank and 50% to the Debtor's bankruptcy estate; *provided*, *however*, that any Trustee's Commission on the amount of the purchase price that exceeds the Minimum Purchase Price shall be deducted from the 50% to be disbursed to the Debtor's bankruptcy estate. For the avoidance of doubt, any Trustee's Commission on the amount of the purchase price that exceeds the Minimum Purchase Price shall not reduce in any way the amount to be disbursed to the Bank under this Agreement.

3.5.5.  Reduction of Estate Proceeds. The Parties each acknowledge and agree that the Estate Proceeds shall be reduced by the Bank Trustee Loan Indebtedness (defined below) prior to any disbursement to the Debtor's bankruptcy estate.

3.5.6.  No Broker's Commission.  The Trustee agrees that no proceeds from the sale of the Hospital shall be paid to any broker from the sale of the Hospital other than the Trustee Commission described in Section 3.5.2 of this Agreement.

4.  **Drop Dead Provision.** In the event that:  (a) the Trustee fails to satisfy the requirements set forth in Section 3.1 of this Agreement on or before the Sale Motion Deadline; (b) the Closing does not occur under the terms and conditions set forth in Section 3.4 of this Agreement on or before the Closing Deadline; or (c) an Event of Default (defined below) exists under this Agreement that is not cured under the terms and conditions set forth in this Agreement:

4.1.  The Bank shall have all the rights and remedies afforded to it under the Agreement, the Pre-Petition Loan Documents, the DIP Loan Documents and applicable law;

4.2.  The Bank shall have the right to immediately present to the Bankruptcy Court for entry on an *ex parte* basis the order attached hereto as Exhibit C (the "Lift Stay Order") immediately granting the Bank relief from the automatic stay of Section 362(a) of the Bankruptcy Code;

4.3.  The Trustee and Debtor hereby grant counsel for the Bank an irrevocable power of attorney solely to submit the Lift Stay Order to the Bankruptcy Court on their behalf subject only to the terms and conditions set forth in this Agreement;

4.4.  The Trustee and the Debtor shall be enjoined from any actions to (a) contest the entry of the Lift Stay Order, (b) modify, amend or obtain reconsideration of this Agreement or the Settlement Order as it relates to these provisions governing the Bank, (c) prevent, restrain or impair the Bank from realizing on its collateral, or (d) otherwise impose or reimpose the automatic stay on the Bank in the Bankruptcy Case; and

4.5.  In addition to, and in no way limiting, the terms and conditions set forth in Section 1.4 of this Agreement, the entry of the Settlement Order shall be deemed final, res

7

judicata and collateral estoppel in this Bankruptcy Case as to Section 4 of this Agreement.

5.    **Bank Payment to Trustee.**  Within five (5) business days of the Effective Date, the Bank shall pay the sum of $25,000.00 to the Trustee to be used by the Trustee to pay all or a portion of any administrative expenses of the Debtor's bankruptcy estate (the "Bank Payment").

6.    **Bank Trustee Loan.**  Within five (5) business days of the entry of the Settlement Order, the Trustee and the Bank shall execute the documents, substantially in the forms attached collectively hereto as Exhibit D, pursuant to which the Bank shall fund the expenses of maintaining the Hospital through the earlier of the Closing or the occurrence of an Event of Default under this Agreement (the "Bank Trustee Loan"). The salient terms of the Bank Trustee Loan are as follows:

6.1.    The Trustee shall be permitted to borrow up to $33,000.00 within the first 30 days after entry of the Settlement Order;

6.2.    Each subsequent 30-day period thereafter, the Trustee shall be permitted to borrow up to $25,000.00;

6.3.    The Bank Trustee Loan shall mature upon the earlier of (i) the Closing; or (ii) an uncured Event of Default occurs under this Agreement or under the documents evidencing the Bank Trustee Loan;

6.4.    The proceeds of the Bank Trustee Loan shall be used by the Trustee only for the actual and necessary expenses to maintain the landscaping, medical records, utilities, and security for the Hospital and shall be subject to the budget attached hereto as Exhibit E;

6.5.    Pursuant to the terms of the Settlement Order, the Bank shall have a superpriority administrative expense claim and a senior lien on all assets of the Debtor pursuant to Section 364(b), (c)(1), (c)(2) and (d) of the Bankruptcy Code, which shall secure the repayment of all amounts owing under the Bank Trustee Loan; and

6.6.    At the Closing, all amounts due and owing under the Bank Trustee Loan shall be paid to the Bank out of the Sale Proceeds and the Estate Proceeds shall be reduced in the amount paid to the Bank for the amounts due and owing under the Bank Trustee Loan.

7.    **Maintenance and Protection of the Hospital.**  From and after the date the Parties execute this Agreement through the earlier of the Closing or the entry of the Lift Stay Order, the Trustee shall have the following obligations with respect to the Hospital:

7.1.    The Trustee shall obtain and, once obtained, maintain current property, casualty, liability and worker's compensation insurance for the Hospital, including but not limited to the Real Estate and the Personal Property;

8

7.2.    The Trustee shall obtain and, once obtained, maintain utilities for the Hospital, including but not limited to electricity, water, gas, propane, and trash service;

7.3.    The Trustee shall cause the landscaping at the Real Estate to be maintained, including but not limited to mowing and weed removal services;

7.4.    The Trustee shall cause the Hospital to be secured by one or more security personnel to be present at the Hospital 24 hours a day and 7 days a week except that no security personnel shall be required to be present at the Hospital when another employee or agent of the Trustee is present at the Hospital;

7.5.    The Trustee shall satisfy all obligations under existing federal and state laws and regulations with respect to the maintenance and transfer of patient records; or, in the alternative, the Trustee may proceed pursuant to the provisions of 11 U.S.C. § 351 with respect to such patient records;

7.6.    The Trustee shall have all medicine and drugs not necessary for any ongoing operations to be conducted at the Hospital removed from the Hospital within thirty (30) days of the execution of this Agreement; and

7.7.    The Trustee shall otherwise maintain and repair the Hospital to keep the Hospital in substantially the same physical condition as existed as of March 21, 2019, ordinary wear and tear excepted.

8.    **Preservation of Lien for the Estate.** The Settlement Order shall contain findings and conclusions by the Bankruptcy Court, and the Bank hereby agrees, that, as of the Petition Date, the Bank had no perfected lien on the Personal Property (other than any lien granted under the terms of the Bank Trustee Loan), the Trustee succeeds to the Bank's lien position and interest, and the Bank's lien is preserved for the benefit of the Debtor's bankruptcy estate under Section 551 of the Bankruptcy Code. The Personal Property shall no longer be considered the Bank's collateral for the Bank loan or for any other loan or obligations other than the Bank Trustee Loan.

9.    **Dismissal of Adversary Proceeding.** Within five (5) business days of the Effective Date, the Trustee shall file a notice of dismissal in the Adversary Proceeding substantially in the form attached hereto as Exhibit F, dismissing the Adversary Proceeding with prejudice and with each party to bear its own costs, expenses and attorneys' fees.

10.    **Representations, Warranties and Covenants.**

10.1.    Subject to the approval of the Bankruptcy Court, each of the Parties represents and warrants to the other Party that it has full right, power, and authority to enter into and perform this Agreement, that the undersigned signatory is duly authorized to execute this Agreement on its behalf, that this Agreement is a valid and binding obligation (subject to applicable bankruptcy, insolvency, moratorium, or other similar laws relating to creditors' rights and general principles of equity), that no other party is required to approve or consent to such performance, and that such performance does not violate, conflict with, or constitute a default under any

9

indenture, agreement, governance document undertaking, law, court ruling or regulation to which the Party is a party or by which it is bound.

10.2. Except for the specific representations and warranties set forth in this Agreement, no Party makes any representation or warranty of any kind or nature, express or implied, in regards to this Agreement, including but not limited to the accuracy or completeness of any information provided or to communications made by the other Parties in connection with the negotiation, execution, and delivery of this Agreement, nor shall any Party have any liability resulting from any errors or omissions therefrom. Each Party is represented by counsel, has made its own independent investigation of the merits of entering into this Agreement, and, except for the specific representations and warranties set forth in this Agreement, no Party is relying on any representation, warranty, statement, or other assertion made by the other Parties with respect to this Agreement.

11. **Releases.**

11.1. <u>Bank Parties' Release of the Trustee and Debtor Parties</u>. Upon the occurrence of the Effective Date, the Bank, on its behalf and on behalf of its predecessors and successors, and their respective subsidiaries, affiliates, assigns, agents, employees, directors, officers, and all other persons, firms and corporations whomsoever (collectively the "Bank Parties") shall be deemed to have released, acquitted, and forever discharged the Trustee and the Debtor and their respective heirs, legal representatives, agents, servants, attorneys, successors and assigns (collectively, the "Trustee and Debtor Parties") from any and all liability, actions, causes of action, claims and demands whatsoever on account of or arising out of any and all transactions or dealings, including, but not limited to, the transactions or dealings with respect to the Bank Loan, the Bankruptcy Case, the Real Estate, the Personal Property, the Hospital, the State Court Action, the CMS Appeal, and all matters related thereto, from the beginning of time to and including the Effective Date.

Notwithstanding the foregoing, nothing contained in this Agreement or this release shall be deemed to be a waiver, release, modification or forgiveness by the Bank of the amounts owing by the Debtor to the Bank under the Bank Loan, the amounts owing by HMC/CAH Consolidated, Inc. and Health Acquisition Company, LLC to the Bank under the Bank Loan, or the amounts owing by the Trustee to the Bank under the Bank Trustee Loan. The Parties further acknowledge and agree that nothing contained in this Agreement or this release shall be deemed to be a waiver, release, or modification of the Bank's rights, claims, causes of action, and/or remedies, arising out of or relating to the Drumright Regional Hospital in Drumright, Oklahoma.

11.2. <u>The Receiver's Release of the Trustee and Debtor Parties</u>. Upon the occurrence of the Effective Date, the Receiver, on his behalf and on behalf of his predecessors and successors, and their respective heirs, legal representatives, agents, servants, attorneys, and assigns (the "Receiver Parties") shall be deemed to have released, acquitted, and forever discharged the Trustee and Debtor Parties from any and all

CORE/3515738.0002/153749651.3

liability, actions, causes of action, claims and demands whatsoever on account of or arising out of any and all transactions or dealings including, but not limited to, the transactions or dealings with respect to the Bank Loan, the Bankruptcy Case, the Real Estate, the Personal Property, the Hospital, the State Court Action, the CMS Appeal, and all matters related thereto, from the beginning of time to and including the Effective Date.

11.3.     The Trustee Parties' Release of the Bank Parties.   Upon the occurrence of the Effective Date, the Trustee, on his behalf and on behalf of his predecessors and successors, and their respective heirs, legal representatives, agents, servants, attorneys, and assigns (the "Trustee Parties") shall be deemed to have released, acquitted, and forever discharged the Bank Parties from any and all liability, actions, causes of action, claims and demands whatsoever on account of or arising out of any and all transactions or dealings including, but not limited to, the transactions or dealings with respect to the Bank Loan, the Bankruptcy Case, the Real Estate, the Personal Property, the Hospital, the State Court Action, the CMS Appeal, and all matters related thereto, from the beginning of time to and including the Effective Date, including but not limited to any actions that the Trustee or the Debtor's bankruptcy estate may have against the Bank Parties arising under Chapter 5 of the Bankruptcy Code.

11.4.     The Trustee Parties' Release of the Receiver Parties.   Upon the occurrence of the Effective Date, the Trustee Parties shall be deemed to have released, acquitted, and forever discharged the Receiver Parties from any and all liability, actions, causes of action, claims and demands whatsoever on account of or arising out of any and all transactions or dealings including, but not limited to, any transactions or dealings with respect to the Bank Loan, the Bankruptcy Case, the Real Estate, the Personal Property, the Hospital, the State Court Action, the CMS Appeal, and all matters related thereto, from the beginning of time to and including the Effective Date, including but not limited to any actions that the Trustee or the Debtor's bankruptcy estate may have against the Bank Parties arising under Chapter 5 of the Bankruptcy Code.

11.5.     The Debtor Parties' Release of the Bank Parties.   Upon the occurrence of the Effective Date, the Debtor, on its behalf and on behalf of its predecessors and successors, and the Bank's as well as its predecessors' and successors' respective subsidiaries, affiliates, assigns, agents, employees, directors, officers, and all other persons, firms and corporations whomsoever (the "Debtor Parties") shall be deemed to have released, acquitted, and forever discharged the Bank Parties from any and all liability, actions, causes of action, claims and demands whatsoever on account of or arising out of any and all transactions or dealings including, but not limited to, any transactions or dealings with respect to the Bank Loan, the Bankruptcy Case, the Real Estate, the Personal Property, the Hospital, the State Court Action, the CMS Appeal, and all matters related thereto, from the beginning of time to and including the Effective Date, including but not limited to any actions that the Debtor or the Debtor's bankruptcy estate may have against the Bank Parties arising under Chapter 5 of the Bankruptcy Code.

11

11.6.  <u>The Debtor Parties' Release of the Receiver Parties</u>.  Upon the occurrence of the Effective Date, the Debtor Parties shall be deemed to have released, acquitted, and forever discharged the Receiver Parties from any and all liability, actions, causes of action, claims and demands whatsoever on account of or arising out of any and all transactions or dealings, including, but not limited to, any transactions or dealings with respect to the Bank Loan, the Bankruptcy Case, the Real Estate, the Hospital, the State Court Action, the CMS Appeal, and all matters related thereto, from the beginning of time to and including the Effective Date, including but not limited to any actions that the Debtor or the Debtor's bankruptcy estate may have against the Bank Parties arising under Chapter 5 of the Bankruptcy Code.

11.7.  Notwithstanding any herein to the contrary, the foregoing releases shall exclude claims for enforcement of this Agreement, including but not limited to all exhibits attached to this Agreement, or the Settlement Order.

12.  **Events of Default; Remedies.**

12.1.  Subject to the opportunity to cure set out below, each of the following shall constitute an event of default (each, an "Event of Default") under this Agreement:

12.1.1.  Failure of a Party to timely perform any obligations set forth in this Agreement;

12.1.2.  A default exists under the terms of the Bank Trustee Loan;

12.1.3.  The Trustee or the Debtor file, join in, or support any plan of reorganization or liquidation that is in any way inconsistent with the terms and conditions of this Agreement;

12.1.4.  The Bank files, joins in, or supports any plan of reorganization or liquidation that is in any way inconsistent with the terms and conditions of this Agreement;

12.1.5.  The Bank objects to any portion of plan of reorganization or liquidation that is consistent with the terms and conditions of this Agreement;

12.1.6.  The Bankruptcy Case is converted to a case under chapter 7 of the Bankruptcy Code prior to the Closing; provided, however, that no Bank Party, no Receiver Party, no Trustee Party, and no Debtor Party shall seek to convert the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code;

12.1.7.  The Trustee is removed or replaced prior to the Closing; provided, however, that no Bank Party, no Receiver Party, and no Debtor Party shall seek removal or replacement of the Trustee; or

12.1.8.  Any representation or warranty in this Agreement is false in any material respect.

CORE/3515738.0002/153749651.3

12.2.    Upon the occurrence of an Event of Default, the non-breaching Party shall give the breaching Party or Parties written notice (a "Notice of Default") of such Event of Default describing the nature of the Event of Default. The Party or Parties receiving the Notice of Default shall the opportunity to cure such alleged Event of Default solely on the following terms and conditions:

    12.2.1.    Three (3) business days after delivery of the Notice of Default with respect to an Event of Default for the payment of money;

    12.2.2.    Fifteen (15) business days after delivery of the Notice of Default with respect to a non-monetary Event of Default; or

    12.2.3.    With respect to a non-monetary Event of Default that cannot reasonably be cured within the  fifteen (15)  business days, the Party or Parties receiving such Notice of Default shall, within fifteen (15) business days of delivery of the Notice of Default, commence such action as is necessary to cure such default, provide evidence of the commencement of such action to the Party that delivered the Notice of Default, and diligently pursue such action until the Event of Default is cured.

12.3.    In the event of a dispute between the Parties, or any of them, regarding the existence or cure of a non-monetary Event of Default, the Parties agree that such dispute may be submitted to the Bankruptcy Court for resolution on an emergency basis.

12.4.    For the avoidance of doubt, any cure period set forth in this Section 12 of this Agreement shall not apply to any failure of the Trustee to satisfy the requirements of Section 3.1 of this Agreement on or before the Sale Motion Deadline or the requirements of Section 3.4 of this Agreement on or before the Closing Deadline.

12.5.    <u>The Bank's Additional Remedies</u>.

    12.5.1.    In addition to the other remedies contained herein, upon the occurrence of an Event of Default by the Trustee or the Debtor that is not cured under the terms and conditions set forth herein, the Bank may immediately submit the Lift Stay Order to the Court for entry.

    12.5.2.    In the event that the Bank exercises its rights and remedies under this Section 12 of this Agreement or pursuant to the Drop Dead Provision described in Section 4 of this Agreement, within ten (10) business days of the date of the entry of the Lift Stay Order, the Bank and the Trustee shall agree on the engagement of an appraiser to appraise the value of the Personal Property located on the Real Estate (the "Appraisal"). The Bank shall pay for the cost of the Appraisal. The appraiser shall provide his calculation of the "as is" value of the Personal Property located on the Real Estate under a hypothetical sale by auction of the Personal Property located on the Real Estate (the "Personal Property Value"). Within ten (10) business days of the receipt of the Personal Property Value, the Bank shall provide the Trustee with either (i) written notice

CORE/3515738.0002/153749651.3

for the Trustee to take possession of the Personal Property located on the Real estate within thirty (30) days of the date of the notice; or (ii) written notice of the Bank's intent to purchase the Personal Property at the Personal Property Value. Upon receipt of a written notice from the Bank of its intent to purchase the Personal Property, the Trustee shall file a motion to sell such property to the Bank in the amount of the Personal Property Value. The Trustee shall use his best efforts to obtain approval of and close the sale of such property to the Bank in exchange for payment by the Bank to the Trustee of the Personal Property Value. Upon the occurrence of an Event of Default by the Trustee or the Debtor, the Bank shall have all rights and remedies provided to the Bank under Section 4 of this Agreement.

12.5.3. The provisions of this Section 12.5 of this Agreement shall terminate upon the payment of the Bank Sale Proceeds and the Bank Trustee Loan Indebtedness in full as set forth in this Agreement.

12.6. Upon the occurrence of an Event of Default, any non-breaching Party shall have all rights and remedies afforded to it under applicable law and shall have the right to file an action in the Bankruptcy Court to require the breaching Party's specific performance of its obligations under this Agreement and for the enforcement of any rights and remedies related to or arising out of such a breach. In any action at law or in equity arising out of an Event of Default, the prevailing Party shall be entitled to recover his/her or its reasonable and actual attorneys' fees, court costs and litigation expenses in addition to any other relief to which he or it may be entitled.

13.    **Acknowledgments of the Parties**. Each Party acknowledges, represents, and warrants that it is fully and completely informed of the facts relating to the subject matter of this Agreement and of the rights and obligations of each of the Parties; that such Party has entered into this Agreement voluntarily, after having given careful consideration to the making of this Agreement; that such Party has carefully read the entire Agreement; that such Party has discussed the provisions of this Agreement with an attorney of its choice and executed it in reliance upon its own judgment and the advice of counsel; that such Party is legally competent to execute and deliver this Agreement; and that the individuals executing this agreement have the authority to bind such Party and its party affiliates.

14.    **Denial of Liability**. This Agreement represents a settlement of all disputes among the Parties. The Parties each hereby acknowledge and agree that each of the Parties denies liability to the other Parties, and each of them, with respect to each of the disputes set forth in this Agreement. The execution and performance of this Agreement shall not be deemed an admission by any Party to liability to any other Party with respect to any dispute.

15.    **Notices**. All notices, requests, demands and other communications made under this Agreement shall be in writing, correctly addressed to the recipient at the addresses set forth below and shall be deemed to have been duly given; (a) upon delivery, if served personally on the Party to whom notice is to be given; (b) on the date of receipt, refusal or non-delivery indicated on the receipt if mailed to the Party to whom notice is to be given by first class

14

mail, registered or certified, postage prepaid, or sent by overnight courier for next business day delivery; or (c) if sent by email, when such email is transmitted to the email address specified below in this Section and a confirmation of such email being sent has been received by the sender.

15.1.    If to the Bank, addressed to:

> First Liberty Bank
> 9601 N. May Ave.
> Oklahoma City, OK 73120
> Attn: Hoyt C. Henson
> Email:  hhenson@myfirstliberty.com

> With a copy to:

> Nicholas J. Zluticky
> Stinson LLP
> 1201 Walnut, Suite 2900
> Kansas City, MO 64106
> Email:  nicholas.zluticky@stinson.com

15.2.    If to the Receiver, addressed to:

> Brent King
> GlassRatner
> 2300 Main Street, Suite 900
> Kansas City, MO 64108
> Email:  bking@glassratner.com

> With a copy to:

> Sharon L. Stolte
> Sandberg Phoenix & von Gontard
> 4600 Madison Ave., Ste. 1000
> Kansas City, MO 64112
> Email:  sstolte@sandbergphoenix.com

15.3.    If to the Trustee, addressed to:

> Thomas W. Waldrep, Jr., Chapter 11 Trustee
> Waldrep Law
> 101 S. Stratford Road, Suite 210
> Winston-Salem, NC 27104
> Email:  twaldrep@waldrepllp.com

15

With a copy to:

James C. Lanik
Waldrep Law
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Email: jlanik@waldrepllp.com

15.4. If to the Debtor, addressed to:

CAH Acquisition Company 6, LLC
dba I-70 Community Hospital
PO Box 953241
Saint Louis, MO 63195-3241

With a copy to:

Rayford K. Adams III
Spilman Thomas & Battle, PLLC
110 Oakwood Drive
Suite 500
Winston-Salem, NC 27103
Email: tadams@spilmanlaw.com

15.5. Any Party may give written notice of a change of address in accordance with the provisions of this Section 15 and after such notice of change has been received, any subsequent notice shall be given to such Party in the manner described at such new address.

**16.     Careful Review of Agreement and Understanding of Release.**   Each Party represents and warrants to one another that each has carefully read this Agreement and the releases contained herein and understands all terms and conditions without reservation.   The Parties acknowledge that each has had ample opportunity to consult with legal counsel and tax advisors of their choice regarding this Agreement and have so consulted.   Each Party hereto represents that it or he is not acting under coercion, duress, or any misapprehension as to the effect of this Agreement and the releases contained herein.

**17.     Multiple Counterparts.**  This Agreement may be executed in multiple counterpart originals, each of which shall constitute one and the same document and shall be deemed an original.

**18.     Electronic Execution.**  This Agreement may be executed by signatures exchanged electronically which shall be deemed to have the same force and effect as an original signature. The Parties shall thereafter promptly deliver to each other wet ink versions this Agreement.

**19.     Governing Law.**   This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina.

16

20.     **Venue / Jurisdiction**.  In the event of a dispute under this Agreement, the parties hereto consent to the venue and jurisdiction of the federal court in the United States Bankruptcy Court for the Eastern District of North Carolina, to resolve such disputes.

21.     **Successors and Assigns.**  This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

22.     **Miscellaneous**.

22.1.   This Agreement may not be modified in any manner except by written agreement signed by all of the parties hereto.

22.2.   Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision and the remaining provisions of this Agreement.

22.3.   The recitals set out above are hereby incorporated into and are made part of this Agreement, including all terms defined therein.

23.     **FINAL EXPRESSION.**  THIS AGREEMENT IS A FINAL EXPRESSION OF THE AGREEMENT BETWEEN THE PARTIES AND SUCH WRITTEN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR ORAL AGREEMENT OR OF A CONTEMPORANEOUS ORAL AGREEMENT BETWEEN THE PARTIES.  ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS ANY WAY RELATED TO THE CREDIT AGREEMENT.  ANY AGREEMENTS THE PARTIES REACH COVERING THE SUBJECT MATTER OF THIS AGREEMENT ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN THE PARTIES, EXCEPT AS THE PARTIES MAY LATER AGREE IN WRITING TO MODIFY IT.

24.     **WAIVER OF JURY TRIAL**.  TO THE FULLEST EXTENT ALLOWED BY LAW, THE PARTIES HEREBY WAIVE ALL RIGHTS TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING BROUGHT BY ANY OF THEM AGAINST ANY OF THE OTHER PARTIES HERETO, INCLUDING, BUT NOT LIMITED TO, ALL CLAIMS OR COUNTERCLAIMS BY OR AGAINST ANY OF THE PARTIES, WHETHER BASED ON THIS AGREEMENT, THE BANK LOAN DOCUMENTS OR OTHERWISE, AND WHETHER SUCH CLAIMS SOUND IN CONTRACT, TORT, EQUITY, OR OTHERWISE, AND WHETHER SUCH CLAIMS NOW EXIST OR ARISE AFTER THE DATE OF THIS AGREEMENT. THE PARTIES EACH REPRESENT TO THE OTHER THAT THIS WAIVER IS KNOWINGLY, WILLINGLY, AND VOLUNTARILY GIVEN.

*[Remainder of Page Intentionally Left Blank]*

CORE/3515738.0002/153749651.3

IN WITNESS WHEREOF, the Parties hereto execute this Agreement as of the date first set forth above.

**THE BANK**

FIRST LIBERTY BANK

By: _____
Name: JOEY P. ROOT
Title: President ; CEO

**THE RECEIVER**

BRENT KING, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS COURT-APPOINTED RECEIVER OF CAH ACQUISITION COMPANY 6, LLC

_____
Brent King

**THE TRUSTEE**

THOMAS W. WALDREP, JR., NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS THE CHAPTER 11 TRUSTEE OF CAH ACQUISITION COMPANY 6, LLC

_____
Thomas W. Waldrep, Jr.

**THE DEBTOR**

CAH ACQUISITION COMPANY 6, LLC

By: _____
Name: _____
Title: _____

CORE/3515738.0002/153749651.3

IN WITNESS WHEREOF, the Parties hereto execute this Agreement as of the date first set forth above.

**THE BANK**

FIRST LIBERTY BANK

By: _____
Name: _____
Title: _____

**THE RECEIVER**

BRENT KING, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS COURT-APPOINTED RECEIVER OF CAH ACQUISITION COMPANY 6, LLC

_____
Brent King

**THE TRUSTEE**

THOMAS W. WALDREP, JR., NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS THE CHAPTER 11 TRUSTEE OF CAH ACQUISITION COMPANY 6, LLC

_____
Thomas W. Waldrep, Jr.

**THE DEBTOR**

CAH ACQUISITION COMPANY 6, LLC

By: _____
Name: _____
Title: _____

18

IN WITNESS WHEREOF, the Parties hereto execute this Agreement as of the date first set forth above.

**THE BANK**

FIRST LIBERTY BANK

By: _____
Name: _____
Title: _____

**THE RECEIVER**

BRENT KING, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS COURT-APPOINTED RECEIVER OF CAH ACQUISITION COMPANY 6, LLC

_____
Brent King

**THE TRUSTEE**

THOMAS W. WALDREP, JR., NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS THE CHAPTER 11 TRUSTEE OF CAH ACQUISITION COMPANY 6, LLC

_____
Thomas W. Waldrep, Jr.

**THE DEBTOR**

CAH ACQUISITION COMPANY 6, LLC

By: _____
Name: _Thomas W. Waldrep, Jr._
Title: _With authority_

## SCHEDULE 1 – MEMORANDUM OF SETTLEMENT AGREEMENT

CORE/3515738.0002/153749651.3

*In re CAH Acquisition Company 6, LLC, Case No. 19-1300-5*
**Memorandum of Settlement Agreement**

On this 17th day of July, 2019, Thomas Waldrep, Jr., in his capacity as the chapter 11 Trustee in In re CAH Acquisition Company 6, LLC, Case No. 19-01300-5 (the "Trustee"), First Liberty Bank (the "Bank"), and Brent King, in his capacity as court-appointed receiver of CAH Acquisition Company 6, LLC (the "Brent King" and together with the Trustee and the Bank, the "Parties"), following the conclusion of a mediation by Joan N. Feeney, the Parties agree to the following terms of settlement:

- The Bank and Brent King will withdraw the motion to dismiss with each side to bear its own costs, expenses and attorneys' fees;

- The Bank will withdraw motion to determine single asset real estate status, and motion to compel abandonment with each side to bear its own costs, expenses and attorneys' fees. The motion for stay relief is continued subject to call by the Bank;

- The Trustee will withdraw his Stay Violation Motion with each side to bear its own costs, expenses and attorneys' fees;

- The Trustee shall have 120 days from the entry of an order approving this settlement to obtain a signed purchase agreement for the sale of the Hospital at a minimum gross sale price of $3.4 million without any financing contingencies and with accompanying proof of ability to close in a form reasonably satisfactory to the Bank and the Trustee (the "Purchase Agreement") and file a motion to approve a sale of the Hospital under section 363 of the Bankruptcy Code (the "Sale Motion"). Any dispute between the Bank and the Trustee as to what constitutes sufficient proof of ability to close shall be resolved by Joan Feeney as arbitrator by written submission;

- The Trustee shall have 90 days from the filing of the Sale Motion to close the sale of the Hospital;

- In the event the Trustee fails to meet either of the deadlines in the foregoing two paragraphs, First Liberty shall automatically have relief from the automatic stay of 11 U.S.C. § 362 without the necessity of any further motion and the parties will submit a stipulated order granting the Bank immediate relief from stay to the Court for entry. The parties will address the issue of the personal property upon termination of the stay in the settlement agreement;

- The bankruptcy estate shall receive $200,000.00 of the sale proceeds from the sale of the Hospital representing the value of the personal property (the "Estate Proceeds");

- In the event that the gross sale price exceeds $3.4 million, the excess shall be split with 50% being paid to the estate and 50% being paid to the Bank. Any additional commission owed to the Trustee that is a result of the increase in the price over $3.4 million is to be paid from the 50% being paid to the estate;

- Upon the entry of the final order approving this settlement, the Bank shall pay the Trustee $25,000 to be used to pay the administrative expenses of the estate;

- Taxes and other reasonable and customary closing costs shall be paid at closing;

- First Liberty will fund the payment of expenses, if necessary, of up to $33,000 for the expenses of maintaining the collateral for the first 30 days after approval of this settlement and up to $25,000 for each month thereafter until the earlier of (i) sale closing; or (ii) the drop dead date (the "Bank DIP Loan"). The Bank DIP Loan will be paid out of the sale proceeds of the Hospital and the Estate Proceeds shall be reduced by the balance of the Bank DIP Loan as of closing;

- Each of the parties hereto shall bear his/her/its own attorney fees, costs, and pro rata share of the costs of this Mediated Settlement Conference.

- The Trustee will dismiss with prejudice its adversary proceeding brought against the Bank; however, the order approving the settlement will provide that the Bank does not have a lien on the personal property and the Trustee succeeds to the Bank's lien interest under section 551 of the Bankruptcy Code which is preserved for the benefit of the estate;

- The Trustee, the Bank, Brent King and the Debtor will each execute mutual releases of any and all claims they may have against one another such that there will be no future litigation between any of the parties in any way related to the receivership, the Bankruptcy Case, the Hospital, or any of the motions or lawsuits described above;

- This matter has been settled by consent. The parties shall execute a settlement agreement incorporating these terms and the Trustee shall file a motion to approve such agreement under Fed. R. Bankr. P. 9019 and the Trustee shall seek expedited relief. The settlement shall be conditioned on entry of a final order by the Court approving the settlement and approval by the Bank's board of directors.

| | |
|---|---|
| _____ | _____ |
| Trustee | Counsel for Trustee |
| _____ | _____ |
| Bank   Joey P. Root   President : CEO | Counsel for the Bank |
| _____ | _____ |
| Brent King | Counsel for Brent King |
| _____ | |

Joan Feeney, Mediator